IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DROPLETS, INC. | § | |
| | § | |
| v. | § | Case No. 2:11-CV-401-JRG-RSP |
| | § | |
| OVERSTOCK.COM, INC., et al | § | |

**ORDER**

Currently before the Court is Defendants' Overstock Inc., Sears, Roebuck and Company, Sears Brands L.L.C., and Sears Holdings Corporation (collectively, "Defendants") Motion to Exclude the Expert Testimony of Elliot S. Schwartz (Dkt. No. 258, "Motion to Exclude").

**APPLICABLE LAW**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for

the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," *quoting* FED. R. EVID. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## DISCUSSION

In their Motion to Exclude, Defendants set forth three grounds for which to exclude the testimony of Elliot S. Schwartz ("Dr. Schwartz").

First, Defendants argue that Dr. Schwartz's survey is not tied to the alleged invention of the Patents-in-Suit and that the survey is overly broad. Specifically, Defendants contend that the survey sought to measure the perceived importance of the *entirety* of the accused features,

namely Search Suggest, View Cart, Add to Cart, and Store Pick-up features." (Mot. at ¶ 7) (emphasis in original.) Moreover, Defendants argue the descriptions of the allegedly infringing features are overbroad and include features that Plaintiff does not accuse of infringement. (Mot. at ¶ 10.) Regarding Defendants' accusations that Dr. Schwartz's survey is not sufficiently tied to the alleged invention, having reviewed the record, the Court concludes that Defendants have failed to demonstrate that the survey is improperly tied to the importance of the entirety of the accused features. *See e.g.,* (Exh. A, Dkt. No. 277-1) (targeting responses as to particular features through visual depictions of those features); (Exh. B, Dkt. No. 277-2) (same).

Moreover, regarding Defendants' accusations of the survey's overall breath, Defendants argue that portions of the survey specify particular features that are not accused. (Mot. at ¶ 10.) For example, Defendants point to specific screenshots relied upon by Dr. Schwartz in his survey. (*Id*.) However, Plaintiff denies this and it is a matter than can adequately be explored on cross-examination by Defendants and easily understood and evaluated by the jury.  Accordingly, Defendants' request to strike Dr. Schwartz's testimony on this ground is denied.

Second, Defendants argue Dr. Schwartz's methodology is unreliable. Specifically, Defendants argue that (i) Dr. Schwartz's survey improperly relies on "leading questions that cause the respondent to artificially inflate the value of the accused features"; (ii) Dr. Schwartz' survey "does not provide the respondent with any alternatives to the accused features"; (iii) "the reduction in spending in Dr. Schwartz's Report is flawed and unsupported"; and (iv) certain required aspects of reliable surveys are "missing from Dr. Schwartz's survey." (Mot. at pp. 7, 9–11.)

Regarding Defendants' first point, the Court is not persuaded that Defendants' allegations—even if assumed to be true—arise to the level of exclusion under the *Daubert*

standard. For example, Defendants argue Dr. Schwartz's survey improperly relies on "leading questions." (Mot. at ¶ 13.) Yet, in the very next paragraph, Defendants provide specific examples of questions Dr. Schwartz employed that contemplate a broad spectrum of responses in ascertaining Search Suggest Preferences. *See* (*id*. at ¶ 14) (stating the respondents are asked to rate how often they use each feature, how important each feature is to them, whether their spending would have changed if these feature, collectively, had not been available and, if so, by how much). Indeed, one of the survey questions Defendants rely upon in their briefing specifically provides for respondent's open-ended, fill-in-the-blank feedback. *See, e.g.,* (Exh. 1 at 18, Dkt. No. 258-2) (permitting the respondents to specify—in their own words—how their spending would be affected in light of a particular feature). The Court is not persuaded that these survey questions are leading or suggestive in a manner that necessitates their exclusion. Accordingly, Defendants' request to strike Dr. Schwartz's testimony on this ground is denied as well.

     Similarly, regarding Defendants' second through fourth points, the Court is not persuaded that any purported "omissions" in Dr. Schwartz's survey merit his exclusion as a witness under *Daubert*. For example, Defendants argue the survey does not provide alternatives to the accused features, that Dr. Schwartz's report never identifies the amount of spending reported by the customers, and that certain aspects of reliable surveys are missing. (Mot. at pp. 10–11.) The fact that Dr. Schwartz's survey may be imperfect or conducted in an alternative fashion does automatically support Defendants' conclusion that Dr. Schwartz's methodology was unreliable. In fact, many of Defendants' arguments appear to be merely speculative in nature. *See, e.g.,* (Mot. at ¶ 18) ("Because different individuals spend different amounts at the accused websites, a group of people *could* represent a highly disproportionate amount of spending.") (emphasis

added). Accordingly, Defendants have failed to meet their burden of demonstrating Dr. Schwartz's methodology is unreliable under this ground as well.

Third, Defendants argue that Dr. Schwartz is not a qualified expert. In support of their position, Defendants argue that the survey Dr. Schwartz performed for this litigation "is the only survey he has ever designed or conducted relating to patent damages." (Mot. at ¶ 21.) Moreover, Defendants argue Dr. Schwartz "made no effort to research the requirements for a survey regarding patent infringement." (*Id*.) In their Reply, Defendants reiterate that Dr. Schwartz "never conducted a survey related to patent infringement or patent damages prior to this case . . . ." (Reply at p. 5.) Though Defendants urge that they "do not challenge Dr. Schwartz because he is a 'first time' expert," (*id*.) the thrust of their argument appears to be reduced to that very point. That is, it appears Defendants' ultimate conclusion rests on the fact that Dr. Schwartz has never conducted a survey relating to patent infringement.

Defendants' arguments ignore Dr. Schwartz's expertise in the field of conducting and designing surveys (Response at p. 10, n.5), his educational background (Sur-Reply at p. 5), and his thirty years of experience. (*Id*.) *See also* (Response at p. 3) (describing Dr. Schwartz's experience in conducting consumer marketing research surveys). If Defendants believe Dr. Schwartz is a neophyte in the field of patent infringement, they will be accorded an opportunity to portray him as such during cross-examination. Accordingly, Defendants have failed to demonstrate to the Court's satisfaction that Dr. Schwartz is not a qualified expert in this case.

- 6 -

Having considered all of Defendants' objections to Dr. Schwartz's opinions, Defendants' Motion to Exclude the Testimony of Elliot S. Schwartz (Dkt. No. 258) is **DENIED**.

**SIGNED this 7th day of January, 2015.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE