IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DROPLETS, INC. | § | |
| | § | |
| v. | § | Case No. 2:11-CV-401-JRG-RSP |
| | § | |
| OVERSTOCK.COM, INC., et al | § | |

## ORDER

Currently before the Court is Plaintiff's Motion to Exclude the Expert Testimony of Stephen Gray (Dkt. No. 257, "Motion to Exclude").

## APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's

testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," *quoting* FED. R. EVID. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## DISCUSSION

In its Motion to Exclude, Plaintiff sets forth four grounds for which to exclude the testimony of Defendants' expert, Stephen Gray ("Mr. Gray").

First, Plaintiff argues the Court should strike the indefiniteness arguments in Mr. Gray's report for the terms "fourth information" and "presentation information." (Mot. at p. 2.) Specifically, Plaintiff argues the Court should preclude Gray from testifying as to indefiniteness because Defendants failed to raise the issue of indefiniteness in their *Markman* brief or other

claim construction pleadings. (*Id.*) Defendants argue that they did indeed sufficiently raise these issues of indefiniteness in their *Markman* brief. (Response at ¶ 3.) The Court disagrees.

The record reveals Defendants made no such argument in their claim construction briefing with respect to these particular claim terms. *See, e.g.,* (Defendants' Responsive Claim Construction Brief, Dkt. No. 203) (setting forth only a single indefiniteness argument—an argument for the term "hardware, software, and/or user interface capabilities"). The Court held a claim construction hearing on August 13, 2014 and it issued its Claim Construction Memorandum and Order on August 22, 2014. (Dkt. No. 219.) Despite their opportunity to do so, Defendants did not raise indefiniteness arguments with respect to these terms in their briefing or at oral argument. It appears Defendants now wish to circumvent the Court's claim construction process entirely and raise the indefiniteness issue with respect to these two terms—for the first time—before the jury. Defendants will not be accorded such opportunity.

Indefiniteness is a legal conclusion to be determined by the Court. *See, e.g., Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) ("A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims.") (citations and internal quotation marks omitted), *abrogated on other grounds by Nautilus, Inc. v. Biosig Instruments, Inc.,* 134 S. Ct. 2120, 2124 (2014). Because indefiniteness—like all issues of claim construction—is one to be determined as a matter of law, the portions relating to any definiteness determinations with respect to these terms shall be stricken from Mr. Gray's report and Defendants' are precluded from eliciting any testimony from Mr. Gray to that effect.

Second, Plaintiff argues the Court should strike Mr. Gray's report with respect to his obviousness opinion and preclude Mr. Gray from testifying as to obviousness. (Mot. at p. 2.)

Specifically, Plaintiff argues: (i.) the Gray report asserts more than six prior art references and combinations permitted by General Order No. 13-20; and (ii.) the Gray report fails to include more than conclusory obviousness allegations. (*Id*.)

With respect to Plaintiff's first point, the Court observes that it did not order the entry of General Order No. 13-20 that places certain limitations on the number of prior art references. Nevertheless, the parties' Docket Control Order ("DCO") (Dkt. No. 175) does indeed reference the preliminary election phase of the General Order No. 13-20 with respect to prior art references. *See, e.g.,* (*id*. at p. 2.) Further, although the DCO is silent with respect to any final election of prior art references, Defendants appear to have made such election as evidenced by their final election of prior art. (Exh. 3, Dkt. No. 257-3.) Therefore, to the extent any limitations are to be placed on the number of prior art references, limitations would be determined by the *actions* of the parties (for example, through Defendants' voluntary reduction as provided in its notice of final election), rather than by Court order. (*Id*.)

Though it appears Defendants did indeed voluntarily reduce the number of prior art references, the Court observes that Plaintiff has failed to produce any evidence that it objected to the number of combinations in response to that notice. Rather, Plaintiff now—for the first time—objects to Defendants' voluntary reduction by way of seeking to strike Mr. Gray's obviousness combinations entirely. If Plaintiff believed a *de facto* limitation applied by party agreement, it should have timely objected to Defendants' notice prior to the filing of this Motion to Exclude. Accordingly, the Court denies Plaintiff's request on this ground as well.

With regard to Plaintiff's second point, Plaintiff argues Mr. Gray's report "makes only conclusory and boilerplate statement[s]" that are insufficient to amount to a challenge of the patent's validity under an obviousness analysis. (Mot. at p. 4.) The concerns Plaintiff raises

appear to be ones of factual sufficiency and not of methodological error. The Court need not weigh in regarding the parties' disagreement as to whether portions of Mr. Gray's report are conclusory or merely involve boilerplate statements. Such inquires of sufficiency are to be ultimately resolved by the jury and Plaintiff will have ample opportunity to expose any perceived deficiencies of Mr. Gray's report during vigorous cross-examination. Accordingly, Defendants' request to strike Mr. Gray's entire report on this basis is similarly denied.

Third, Plaintiff argues the Court should strike Mr. Gray's anticipation analysis and preclude Mr. Gray from testifying as to anticipation. (*Id*. at 5.) Specifically, Plaintiff sets forth three points to justify striking Mr. Gray's report on this ground: (i.) Mr. Gray's report's anticipation analysis parrots back Defendants' invalidity contentions with no independent analysis from Gray; (ii.) Mr. Gray's report's anticipation analysis fails to apply the Court's claim constructions; and (iii.) Mr. Gray's report's anticipation analysis is a cutting and pasting of block quotes and figures that fail to set forth his expert opinion. *See generally* (Mot. at pp. 5–12.)

Regarding points one and three, Plaintiff challeges the origin of the invalidity charts Mr. Gray provides for his underlying anticipation analysis. Specifically, Plaintiff cites to several characteristics and purported quirks in the charts in question that lead it to the conclusion that Mr. Gray could not have been the original author of the charts. *See, e.g.,* (Mot. at pp. 7–8) (citing certain irregularities in the documents' footers, common misspellings among different sets of charts, and the like). Nevertheless, as Plaintiff itself points out, Mr. Gray has previously testified that "he created the charts wholly on his own, including by beginning with a blank Word document and working from there." (Mot. at 7) (*citing* Exh. 22, Dkt. No. 257-22 at 158:6–159:3). The fact that Mr. Gray's testimony purportedly "strains the bounds of credibility" as Plaintiff contends is of no moment regarding the *admissibility* of his report. Plaintiff will be

accorded ample opportunity to impugn Mr. Gray's credibility during cross-examination if it believes Mr. Gray has been less than forthright in representing the charts' origins.

The Court finds Plaintiff's allegations regarding the cutting and pasting of block quotes without Mr. Gray's explanation as to why a particular reference includes various claim elements within the context of the Court's claim construction equally unavailing. (Mot. at pp. 10–12.) The jury, in their role as fact finders, can determine through Mr. Gray's testimony on cross-examination, the degree of independent analysis Mr. Gray performed in formulating his expert opinions.

Finally, to further support its point on this issue, on December 22, 2014, Plaintiff filed a Notice of Supplemental Authority in Support of Droplets' Motion to Strike and Exclude Expert Report and Testimony of Stephen Gray ("Supplemental Notice"). (Dkt. No. 325.) In its Supplemental Notice, Plaintiff relies upon *Numatics, Inc. v. Balluff, Inc.*, Dkt. 146, Case No. 2:13-cv-11049 (E.D. Mich. Dec. 16, 2014). In *Numatics*, the Eastern District of Michigan struck a portion of an expert report that was not drafted by the expert himself. *Id*. at *41. Plaintiff suggests Mr. Gray's report should be similarly stricken based on the *Numatics* case. (Supplemental Notice at p. 1.)

The facts of *Numatics* are inapposite to the facts of the instant suit. For example, in *Numatics*, the expert (Michael Justice) conceded during his deposition that he did not draft the report. *Id*. at *9. Rather, the court found—and counsel readily conceded—that counsel for defendants drafted the expert report and provided it to Mr. Justice for his signature. *Id*. Not only did counsel not deny drafting the report, counsel attempted to justify such practice at oral argument. *Id*. at *4.

In contrast, Mr. Gray testified and represented under oath that he indeed created his own charts. (Exh. 22, Dkt. No. 257-22 at 158:6–159:3.) Moreover, Defendants insist—by and through their counsel—that Mr. Gray's report contains an independent analysis. *See, e.g.*, (Response at ¶¶ 16–17.) As noted previously, if Plaintiff is incredulous of Mr. Gray's representations of his independent analysis, it is free to explore those issues of credibility on cross-examination of the witness.

Regarding Plaintiff's second point, the Court finds Plaintiff has not set forth a compelling justification to strike Mr. Gray's report simply because "the claim charts that form the basis for Gray's anticipation opinions were prepared *before* the Court issued its claim construction order . . . ." (Mot. at p. 9) (emphasis in original). If Plaintiff believes Mr. Gray's anticipation analysis is insufficient based on any perceived discrepancies between the charts and the Court's claim construction, it will be accorded its opportunity to question the veracity of Mr. Gray's conclusions on cross-examination. Accordingly, Plaintiff's request to strike the anticipation portions of Mr. Gray's report on this ground is denied as well.

Fourth and finally, Plaintiff argues the Court should strike Defendants' untimely disclosures of new non-infringing alternatives and of opinions related to comparability. (Mot. at p. 12.) Specifically, Plaintiff argues Defendants did not complete their response to an interrogatory (Interrogatory 2) served over two years prior with the requisite specificity to merit the inclusion of this information in Mr. Gray's report. (Mot. at p. 13.) Put simply, Plaintiff concludes that Mr. Gray's report should be stricken because the portions relating to Interrogatory 2 were not timely served. (*Id.*)

For example, Plaintiff argues nowhere in Defendants' initial response to Interrogatory 2 did Defendants identify non-infringing alternatives. *See* (*id.*) (regarding Defendants' June 6,

2014 objections and responses to Plaintiff's Interrogatory 2. Plaintiff further claims Defendants did not provide their non-infringing alternative theories until September 26, 2014—the deadline for rebuttal expert reports. (*Id.*) Defendants contend their objections and responses to the June 6, 2014 deadline contemplated supplementing their theories based on additional findings of their expert and throughout expert discovery. (Response at pp. 19–20.); *see also* (Exh. 18, Dkt. No. 276-19) (preserving Defendants' right to incorporate experts' opinions); (Exh. 19, Dkt. No. 276-20) (same).

According the parties' current Docket Control Order (Dkt. No. 175), the parties' expert report and rebuttal reports were due in September 2014, with the close of expert discovery in October 2014. To the extent Plaintiff maintains that Mr. Gray's non-infringing alternative theories should have been set forth in his initial report rather than his rebuttal report, Plaintiff has failed to demonstrate prejudice as a result of any purported untimely disclosure of his theories. For example, Plaintiff's claim that its survey expert could have incorporated such non-infringing alternatives into his survey is unpersuasive given the fact that Plaintiff elected to perform its surveys in July 2014—months before the expert reports were even due. *See, e.g.,* (Exh. 26, Dkt. No. 276-27) (performing the Overstock survey between July 18, 2014 and July 28, 2014). Moreover, there is no evidence that Plaintiff sought relief in September 2014 to amend its expert report in light of the findings of Mr. Gray it believed—at a minimum—should have been incorporated in Mr. Gray's initial expert report. This is similarly true regarding Plaintiff's allegations as to the timeliness of Mr. Gray's testimony regarding undisclosed patents that he deems comparable to the Patents-in-Suit. (Mot. at pp. 14–15.) Accordingly, striking Mr. Gray's testimony as to non-infringing alternatives and comparable patents is simply not appropriate under these facts.

## CONCLUSION

Having considered all of Plaintiff's objections to Mr. Gray's opinions, and for the foregoing reasons, Plaintiff's Motion to Exclude the Testimony of Stephen Gray (Dkt. 273) is **GRANTED** as to the issue of indefiniteness and **DENIED** as to the remaining issues.

**SIGNED this 9th day of January, 2015.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE