IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DROPLETS, INC. | § | |
| | § | |
| v. | § | Case No. 2:11-CV-401-JRG-RSP |
| | § | |
| OVERSTOCK.COM, INC., et al | § | |

## ORDER

Currently before the Court is Plaintiff's Motion to Exclude the Expert Testimony of Ambreen Salters (Dkt. No. 273, "Motion to Exclude").

## APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's

testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," *quoting* FED. R. EVID. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## DISCUSSION

In its Motion to Exclude, Plaintiff sets forth five grounds for which to exclude the testimony of Defendants' damages expert, Ambreen Salters ("Ms. Salters").

First, Plaintiff argues Salters' discussion of certain alleged non-infringing alternatives should be precluded as unreliable and speculative. (Mot. at p. 2.) Specifically, Plaintiff argues five main points: (i.) Salters opines on non-infringing alternatives not disclosed by Defendants during the fact discovery period; (ii.) Salters asserts that all purported competitors of Droplets

not accused of infringement are non-infringing alternatives; (iii.) Salters improperly equates a previously-licensed alternative with a presently available non-infringing alternative; (iv.) Salters offers unreliable speculation regarding the interpretation and scope of the Adobe license; and (v.) the theoretical possibility of implementing the accused features in alternative technology does not create non-infringing alternatives. *See generally* (Mot. at pp. 3–7.)

Regarding Plaintiff's first point, the Court notes Plaintiff alleges similar grounds of exclusion in its Motion to Exclude the Expert Testimony of Stephen Gray (Dkt. No. 257). The Court will address Plaintiff's arguments relating to the timeliness of disclosure in a separate order specifically addressing Mr. Gray's findings and, thus, will not repeat its positions here.

Regarding Plaintiff's second point, the Plaintiff argues Ms. Salters' assumption that any competitor of Droplets that Droplets has not sued for infringement is a non-infringing alternative is in direct conflict with law. *See, e.g.,* (Mot. at pp. 3–4) (arguing that neither Salters nor Defendants' technical expert Mr. Gray conducted an independent study as to whether or not certain products are non-infringing alternatives). Specifically, Plaintiff argues Salters should be precluded from making the assertion that Canoo, Curl, and Nexaweb are non-infringing alternatives simply because Droplets has not accused them of infringement. (*Id*. at 4.) The Court agrees. Defendants shall be precluded from eliciting testimony from Ms. Salters to the extent they seek to establish Canoo, Curl, and Nexaweb as non-infringing alternatives without an established technical basis for such conclusion through either Ms. Salters' or Mr. Gray's independent analysis.

Similarly, regarding its third point, Plaintiff argues that the fact a product that is or was licensed does not make it a *de facto* non-infringing alternative. (*Id*. at 5.) Specifically, Plaintiff argues Salters should be precluded from making the assertion that the previously-licensed Adobe

Flex product is a non-infringing alternative simply because it was licensed (*Id.*) The Court agrees. Defendants shall be precluded from eliciting testimony from Ms. Salters to the extent they seek to establish the Adobe Flex product as a non-infringing alternative without an established technical basis for such conclusion through either Ms. Salters' or Mr. Gray's independent analysis

Regarding Plaintiff's points four and five, Plaintiff's concerns appear to be derived, in part, by a purported lack of underlying technical analysis performed by Stephen Gray. Because Ms. Salters has been identified as a non-technical damages expert, she must rely on a technical expert to support her opinions concerning how damages would be affected by these proposed non-infringing alternatives. Moreover, because the remaining issues identified by Plaintiff—with specific regard to Ms. Salters' findings—relate to factual sufficiency and not methodology, those perceived deficiencies should be addressed during cross-examination of this witness.

Second, Plaintiff argues Salters should be precluded from relying upon Sears license agreements served concurrently with and after her expert report. (Mot. at p. 7.) Specifically, Plaintiff argues this license should be excluded as untimely because "the Court ordered Sears to produce [the Sears] licenses on August 21, 2014, but Sears did not produce them until September 23, 2014 and September 26 . . . ." (*Id.* at 8.) The license Plaintiff refers to was the subject of Plaintiff's Motion to Compel Production of Source Code and Financial Information. *See* (Dkt. No. 206) (referring specifically to Interrogatory 7). The Court held a hearing on the motion on August 21, 2014 and it issued its Order on August 25, 2014. (Dkt. No. 220.) The record reflects that the issue of timely production of this license was determined by party agreement. *See* (Dkt. No. 220.) ("At the hearing on the Motion, the parties represented to the Court that they had reached agreement on a number of issues, but two disputes remained [continuing with the

Court's ruling on issues unrelated to the Sears license]"). Indeed, Plaintiff agreed during the August 21, 2014 hearing to receive this license at a later date. *See* (Exh. E, Dkt. No. 273-5 at 39:12–16) ("Mr. Budwin: And then with respect to our document request and Interrogatory 7, the Defendants . . . have agreed to give us all patent licenses in the last five years that are related to the website[] Sears.com . . . ."). Because Plaintiff has failed to demonstrate Defendants' September production was unreasonable in light of the parties' agreement during the August 21, 2014 hearing, Plaintiff's request to strike this portion of Ms. Salter's report is denied on this ground as well.

Third, Plaintiff argues various grounds to exclude Ms. Salters' testimony regarding purported comparable transactions. (Mot. at 8.) For example, Plaintiff argues that: (i.) Ms. Salters cannot present a supporting damages opinion based on litigation-related patent licenses; (ii.) Ms. Salters relies on comparable licenses despite not knowing key details about the transactions; (iii.) none of the licenses Ms. Salters relies upon involve the Patents-in-Suit or the same accused features; (iv.) Ms. Salters relies on settlement licenses that are temporally divorced from the hypothetical negotiations; and (v.) Ms. Salters should not opine on admittedly non-comparable Schwab and RPX agreements. *See generally* (Mot. at pp. 9–13.)

Plaintiff fails to persuade the Court that Ms. Salters' reliance on these past licenses involved a methodology so flawed it must be excluded under Rule 702. Specifically, the factual and temporal distinctions Plaintiff draws between the six licenses in dispute vis-à-vis the hypothetical negotiations of the Patents-in-Suit in 2005 and 2010 can be adequately addressed during the cross-examination of Ms. Salters by challenging the veracity of her conclusions and the factual underpinnings that support them. Accordingly, the Court finds the manner in which Ms. Salters' presents these licenses in her analysis does not merit their exclusion.

With respect to the admissibility of prior settlement agreements, concerns of admissibility under Federal Rule of Evidence 408, etcetera, the Court notes Plaintiff proffered similar arguments in its Motion in Limine filed November 24, 2014. (Dkt. No. 294 at pp. 5–6.) The Court heard oral argument on this issue during the December 8, 2014 pretrial hearing and ruled on the motion shortly thereafter. *See* (Dkt. No. 321) (granting the motion to settlement discussions and negotiations with any unsettled defendants and as to any mediation statements or other mediation documents pertaining to this case or other Droplets cases or Court-ordered mediations but denying as to settlement agreements containing licenses with settled parties). Because the issue of the generally admissibility of finalized settlement agreements has been fully briefed, argued, and ruled upon, it will not be revisited in here. The Court notes, nothing in this Order shall be construed to disturb the Court's previous ruling on this issue.

Fourth, Plaintiff argues Salters does not attempt to show the purported relevance of Droplets' software license agreements. (Mot. at p. 13.) Specifically, Plaintiff objects to Ms. Salters' reliance on various software licenses that are purportedly technologically and temporally distant to the licenses to the hypothetical negotiation. (Reply at p. 5.) *See, e.g.*, (Mot. at 13) ("[A]ll but two of the software licensing agreements . . . were entered into prior to the issuance of the first Patent-in-Suit."); (*id.*) ("[S]ome of the licensing agreements included significant non-monetary benefits."). Defendants argue the software licenses in question are probative of the hypothetical negotiation for at least involving software products described in the three Patents-in-Suit. (Response at ¶ 17; Sur-Reply at ¶ 7.) Further, Defendants argue the fact that *some* license agreements involve significant non-monetary benefit to Plaintiff disregards Ms. Salters' ability to ascribe value in her damage analysis to any non-monetary benefits. (Response at ¶ 20.)

Plaintiff fails to persuade the Court that Ms. Salters' reliance on these past licenses involved a methodology so flawed it must be excluded under Rule 702. Plaintiff is free to cross-examine Ms. Salters on the differences it believes are present in these agreements and how those differences might impact the hypothetical negotiation. Accordingly, Plaintiff's objection to Salters' report on this ground is denied as well.

Fifth and finally, Plaintiff argues Salters' opinion violates the August 21, 2014 Order regarding Defendants' reference to future sales projections. *See* (Mot. at p. 14.) (*citing* Dkt. No. 220). Specifically, Plaintiff argues Ms. Salters' report seeks to exploit the issue of future sales projections notwithstanding the Court's purported admonishment regarding Defendants' reliance on those projections. (*Id.*) Plaintiff further characterizes Defendants' representation to the Court as one that would prevent Defendants from making *any* reference to future sales projections. (Reply at 5.) The Court disagrees.

The August 21, 2014 Order Plaintiff relies upon related to a Motion to Compel Production of Source Code and Financial Information. (Dkt. No. 206.) Specifically, the portion Plaintiff relies upon relates to Defendants' response to Interrogatory 3, as reproduced below:

> Identify and describe the projected future amount of revenue, both gross and net, that You estimate will be derived by You from use of the Accused Features and/or sales through the Relevant Products in the United States *for the next five (5) years*, and the method by which such totals were computed and the identification of documents that reflect this information.

(Exh. 16, Dkt. No. 206-17) (emphasis added.) Upon review of Plaintiff's carefully worded interrogatory, the Court notes the sales projections referred to in this discovery request were for future projections "for the next five (5) years" from the time of service. (*Id.*) Ms. Salters' report, in contrast, references forecasts *from the time of the hypothetical negotiation* (*i.e.*, 2005 and 2010 for Sears and Overstock, respectively). (Exh. 1, Dkt. No. 282-3 at ¶¶ 158–59, and

- 8 -

161.) These portions of Salters' report, therefore, do not implicate the concerns raised by Plaintiff regarding Interrogatory 3, or the Court's Order regarding the same. (Dkt. No. 220.) Accordingly, Plaintiff's request to strike these portions of Ms. Salters' report is denied on this ground as well.

## CONCLUSION

Having considered all of Plaintiff's objections to Ms. Salters' opinions, Plaintiff's Motion To Exclude the Testimony of Ambreen Salters (Dkt. 273) **GRANTED** as to the issues of non-infringing alternatives as set forth above, and **DENIED** as to the remaining issues.

**SIGNED this 9th day of January, 2015.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE