# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **DROPLETS, INC.** | |
| **Plaintiff,** | **Civil Action No.  2:11-cv-00401-JRG-RSP** |
| **v.** | |
| **OVERSTOCK.COM, INC.,**<br>**SEARS ROEBUCK & CO.,**<br>**SEARS BRANDS, LLC,**<br>**SEARS HOLDING CORPORATION,** | |
| **Defendants.** | |

**JOINT PROPOSED FINAL JURY INSTRUCTIONS[1] [2]**

---

[1] The Parties reserve the right to amend, supplement, or modify these proposed Final Jury Instructions as the case proceeds.  Additionally, the parties do not waive any objection to instructions on issues that are currently the subject of pending or resolved motions.  Such objections are hereby restated.  Further, by submitting these proposed Final Jury Instructions, the Parties do not waive their rights to object to the submission or form of any instructions submitted to the jury.

[2] In addition, Defendants reserve the right to try and submit equitable defenses to the Court following the jury portion of this trial, pursuant to agreement between the parties on this approach.  This Joint Proposed Final Jury Instructions therefore does not contain proposed instructions on Defendants' equitable defenses.  Nothing in these proposed instructions should be construed as waiving those defenses.

## I.  INTRODUCTION[3]

Members of the Jury:

You have now heard the evidence in this case.  I will now instruct you on the law that you must apply to that evidence.  It is your duty to follow the law as I give it to you.  However, as I have said previously, you the jury are the judges of the facts.  Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I give you these instructions, the attorneys will make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist you in recalling and understanding the evidence and the parties' contentions.

A verdict form has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in the blanks in that form, date it and sign it.  Answer each question in the verdict form from the facts as you find them.  Do not decide who you think should win and then answer the questions to reach that result.  Your answers and your verdict must be unanimous.

---

[3] *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.) (Dkt. No. 256).

## II.  CONSIDERING WITNESS TESTIMONY[4]

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have introduced them.  You may also consider any stipulations or agreements of the parties in this case.

By allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence. As stated before, you are the sole judges of the credibility of all witnesses and what weight and effect to give to all the evidence in this case.

When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess and talking to them when you were out of the courtroom.  This happened because often during a trial, something comes up that does not involve the jury.  You should not speculate on what was said during such discussions that took place outside of your presence.

---

[4] *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

### III. HOW TO EXAMINE THE EVIDENCE[5]

Certain testimony in this case has been presented to you through depositions.   A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. If a witness cannot be present to testify in person from the witness stand, the witness's testimony may be presented, under oath, in the form of a deposition.   Before this trial, attorneys representing the parties in this case questioned these deposition witnesses under oath. A court reporter was present and recorded the testimony. Deposition testimony is entitled to the same consideration as testimony given by a witness in person from the witness stand.   Accordingly, you should judge the credibility of and weigh the importance of deposition testimony, to the best of your ability, just as if the witness had testified in court in person.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.   In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

You may properly determine that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence, you believe that single witness.

---

[5] *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

## IV. DIRECT AND CIRCUMSTANTIAL EVIDENCE[6]

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case.  One is direct evidence—such as testimony of an eyewitness.  The other is indirect or circumstantial evidence that is, the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you find the facts based on the evidence presented, both direct and circumstantial.

---

[6] *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

## V.  EXPERT WITNESS[7]

When knowledge of a technical subject may be helpful to the jury, a person who has special training or experience in that technical field—called an "expert witness"—is permitted to state his or her opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is solely up to you to decide whether to rely upon it or not.

---

[7] Adapted from *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

## VI. BURDEN OF PROOF[8]

There are two standards of proof that you will apply in this case.  As I mentioned at the beginning of the trial, preponderance of the evidence means evidence that persuades you that a claim is more likely true than not true.

Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the matter at issue.  When a party has the burden of proving any claim or defense by clear and convincing evidence, it means the evidence must have persuaded you that the claim or defense is highly probable. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.  However, the clear and convincing standard it is not so high as the standard used in criminal law, which is evidence beyond a reasonable doubt.  If the proof establishes in your mind a firm belief or conviction, then the standard has been met.[9]

In determining whether any fact has been proved, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.

As I did at the start of the case, I will first give you a summary of each side's contentions in this case.  I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

---

[8] Adapted from *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

[9] Adapted from *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

## VII.    THE PARTIES AND THEIR CONTENTIONS[10]

Droplets seeks damages from Defendants for allegedly infringing certain claims of U.S. Patent Nos. 6,687,745, 7,502,838, and 8,402,115 ("the '745, '838, and '115 patents").   For convenience, I will often refer to a patent by its last three numbers, '745, '838, and '115, or as the patents-in-suit.  Specifically, Droplets contends that Defendants have infringed the patents-in-suit by providing certain embedded interactive functionality through their websites, specifically the following features:  search suggest, add to cart, mouse hover over shopping cart, and store pickup locator. Droplets seeks damages in the form of a royalty.

Defendants deny that they have infringed the claims of the '745, '838, and '115 patents. Defendants also deny that they have induced others to infringe the claims of the '745, '838, and '115 patents.  Defendants further deny that Droplets is entitled to any damages.

In addition, Defendants contend that Droplets' asserted claims are invalid because they are anticipated by and rendered obvious by one or more prior art references.  Defendants also contend that the asserted claims are invalid because they are not enabling.  Defendants further contend that they have a license to practice the asserted claims.

I will now give you instructions and definitions to help you in answering the questions that will be presented to you. [11]

---

[10] Adapted from *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

[11] *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

## VIII.        CLAIM INTERPRETATION[12]

Your job is to decide whether any of the asserted claims in the '745, '838, and '115 patents have been infringed and whether any of the asserted claims are invalid.  Infringement and invalidity are separate questions and should be considered and answered separately.  If you decide that any claim of any of the patents-in-suit has been infringed and is not invalid, you will then need to decide what amount of money damages are to be awarded to Droplets as compensation for such infringement.

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case.  I will now give you more detailed instructions about the patent laws that specifically relate to this case.

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."  The patent claims are the numbered sentences at the end of the patent.  The claims are important because it is the words of the claims themselves that define what a patent covers.  The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.  Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim.  Therefore, what a patent covers depends on what each of its claims covers.

Claims are usually divided into parts or steps, called "limitations" or "elements."  For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the

---

[12] *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

glue that secures the legs to the tabletop.  In this example, the tabletop, legs, and glue are each separate limitations of the claim.

You first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.  The first step is to understand the meaning of the words used in the patent claim.  The law says that it is my role to define the terms of the claims, and it is your role to apply my definitions to the issues that you are asked to decide in this case.  Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims, and I have provided to you my definitions of certain claim terms.  These are in your juror notebooks and a copy of these definitions will be attached to these final instructions as Exhibit A.  You must accept my definitions of these words in the claims as being correct.  It is your job to take these definitions that I have supplied and apply them to the issues that you are asked to decide, including both of the issues of infringement and invalidity.

For claim terms that I have not construed or defined, you are to use the ordinary and accustomed meaning as understood by one of ordinary skill in the art, which is to say, in the field of technology of the patent.

I will now explain how a claim defines what it covers.

## IX. WHAT A CLAIM COVERS[13]

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence.  If a device satisfies each of these requirements in that sentence, then it is covered by the claim.

There can be several claims in a patent.  A claim may be narrower or broader than another claim by setting forth more or fewer requirements.  The coverage of a patent is assessed on a claim-by-claim basis. In patent law, the requirements of a claim are often referred to as the "claim elements" or "claim limitations."  When a feature meets all of the requirements of a claim, the claim is said to "cover" that feature, and that feature is said to "fall" within the scope of that claim.  In other words, a claim covers a feature where each of the claim elements or limitations is present in that feature. If a feature is missing even one limitation or element of a claim, the feature is not covered by the claim.  If the feature is not covered by the claim, that feature does not infringe that claim.  A claim requirement may describe a certain functionality or capability that the feature must possess.  In such cases, a feature satisfies the requirement if it is reasonably capable of operating in the recited manner.

---

[13] *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256 at 6-7).

## X.  INDEPENDENT AND DEPENDENT CLAIMS[14]

Patent claims may exist in two forms, referred to as independent claims and dependent claims.  An independent claim does not refer to any other claim of the patent.  An independent claim sets forth all of the requirements that must be met in order to be covered by that claim.  It is not necessary to look at any other claim to determine what an independent claim covers.

In this case, Claim 1 of the '745 patent, Claim 1 of the '838 patent, and Claim 25 of the '115 patent are independent claims.

The remaining asserted claims—Claim 2 of the '838 patent and Claims 2 and 24 of the '115 patent—are dependent claims.  A dependent claim does not itself recite all of the requirements of the claim but refers to at least one other claim in the patent for some of its requirements.[15]  A dependent claim includes each of the limitations of the other claim to which it refers, as well as the additional limitations recited in the dependent claim itself.  In this way, the claim "depends" on another claim.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim or claims to which it refers.

In order to find infringement of a dependent claim, you must first determine whether the independent claim to which it refers has been infringed.  Thus, you must consider all limitations of both the dependent claim and independent claim from which it depends.  If you decide that the independent claim has not been infringed, then the dependent claim cannot have been infringed. If you decide that the independent claim has been infringed, you must then separately determine

---

[14] *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519 at 10).

[15] Fed. Cir. Bar Ass'n Model Patent Jury Instructions at B.2.2a.

whether each additional requirement of the dependent claim has also been infringed.  If each additional requirement has been included, then the dependent claim has been infringed.

### XI. COMPRISING[16]

The beginning portion, or preamble, of a number of claims uses the word "comprising." The word "comprising," when used in the preamble, means "including" or "containing."  When "comprising" is used in the preamble, a device that includes all the limitations of the claim is covered by the claim even if the device contains additional elements.

---

[16] *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

## XII.    INFRINGEMENT GENERALLY[17]

I will now instruct you on how to decide whether Droplets has proven that Defendants have infringed one or more of the asserted claims of the '745, '838, and '115 patents.  A patent owner has the right to stop others from using the invention covered by its patent claims in the United States during the life of the patent.  If any person makes, uses, sells or offers to sell within the United States or imports into the United States what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.  Droplets must prove by a preponderance of the evidence that Defendants have infringed the asserted claims of the patents.

Infringement is assessed on a claim-by-claim basis.   Therefore, there may be infringement as to one claim but no infringement as to another claim in a patent.

In this case, Droplets accuses Defendants of infringing claim 1 of the '745 patent, claims 1 and 2 of the '838 patent, and claims 2, 24, and 25 of the '115 patent by making, using, selling or offering for sale in the United States or importing into the United States features which Droplets contends contain all of the requirements of the claims.  Specifically, Droplets accuses the following Overstock.com features of infringing the following asserted patent claims:

- Overstock's "Search Suggest" feature is accused of infringing claim 1 of the '745 patent, claims 1 and 2 of the '838 patent, and claims 2, 24, and 25 of the '115 patent;

- Overstock's "Mousehover" feature is accused of infringing claim 1 of the '745 patent, claims 1 and 2 of the '838 patent, and claims 24, and 25 of the '115 patent.

---

[17] Adapted from *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

In addition, Droplets accuses the following Sears' website features of infringing the following asserted patent claims:

- The Kmart and Sears "Add-to-Cart" features are accused of infringing claim 1 of the '745 patent, claims 1 and 2 of the '838 patent, and claims 24 and 25 of the '115 patent;

- The Kmart and Sears "Search Suggest" features are accused of infringing claim 1 of the '745 patent, claims 1 and 2 of the '838 patent, and claims 2, 24, and 25 of the '115 patent; and

- The Sears "Store Pickup Locator" feature is accused of infringing claim 1 of the '745 patent and claims 1 and 2 of the '838 patent.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the asserted patent claims, as I have defined each of them, to the accused features, and determine whether or not there is infringement. You should not compare the accused features with any specific example set out in the patent or with the patent holder's commercial products or with the prior art. The only correct comparison is with the language of the claim itself, as I have explained its meaning to you.

You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

In this case, there are three possible ways that a claim may be infringed: (1) direct literal infringement; (2) direct infringement under the doctrine of equivalents; and (3) indirect infringement by active inducement. I will now explain each of the types of infringement.[18]

---

[18] *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519 at 12).

## XIII.     DIRECT INFRINGEMENT[19]

There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents."

A patent can be directly infringed even if the alleged infringer did not have knowledge of the patent and without the infringer knowing that what it was doing is infringement of the claim. A patent may also be directly infringed even though the accused infringer believes in good faith that what it is doing is not an infringement of the patent.  Infringement does not require proof that a party copied the asserted patent claims.[20]

### A.     Literal Infringement[21]

In order to prove literal infringement of a patent claim, Droplets must show by a preponderance of the evidence that the accused feature meets all of the requirements of Droplets' asserted claims.  In determining whether an accused feature literally infringes one or more of the asserted claims in this case, you must compare the accused feature with each and every one of the requirements of each asserted claim to determine whether all of the requirements of that claim are met.  A claim requirement is present if it exists in an accused product just as it is described in the claim language, either as I have explained the language to you or, if I did not explain it, as it would be understood by one of skill in the art.  If any of the accused features omit

---

[19] Adapted from *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519 at 12); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256 at 13).

[20] *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519).

[21] Adapted from *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519 at 12); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256 at 13-14).

any requirement recited in a claim, then you must find that the particular feature does not literally infringe that particular claim.

In this case, Droplets contends that Sears literally infringes claim 1 of the '745 patent, claims 1 and 2 of the '838 patent, and claims 2, 24, and 25 of the '115 patent. Droplets contends that Overstock literally infringes claim 1 of the '745 patent, claims 1 and 2 of the '838 patent, and claims 2, 24, and 25 of the '115 patent.

You must determine, separately for each asserted claim, whether or not there is literal infringement.  However, if you find that an independent claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers to that independent claim.

### B.      Infringement Under the Doctrine of Equivalents[22]

If a person makes, uses, sells, offers to sell within, or imports into, the United States a feature that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that feature satisfies that claim under the "doctrine of equivalents."

In this case, Droplets only alleges that Overstock's search suggest feature directly infringes claim 1 of the '745 patent [Droplets propose: , claims 1 and 2]  [Defendants propose: and claim 1] of the '838 patent [Droplets propose: , and claims 2 and 24 of the '115 patent] under the doctrine of equivalents.  You should not consider the "doctrine of equivalents" for any other claims. [23] [24]

---

[22] Adapted from *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256 at 15).

[23] Defendants object because Droplets has neither pleaded, nor raised through its experts, the doctrine of equivalents for claim 2 of the '838 patent, and claims 2 or 24 of the '115 patent.

Under the doctrine of equivalents, a feature infringes a claim if the accused feature performs steps or contains elements corresponding to each and every requirement of the claim that is equivalent to, even though not literally met by, the accused feature.  You may only find that a step or element is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the action or structure: (1) performs substantially the same function, (2) works in substantially the same way, (3) to achieve substantially the same result as the requirement of the claim.  In order for the feature to be considered interchangeable, the feature must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient.[25]  In order to prove infringement by "equivalents," Droplets must prove the equivalency of the feature to a claim element by a preponderance of the evidence.

---

[24] Droplets objects as this is an incomplete statement of Droplets' claims.

[25] Fed. Cir. Bar Ass'n Model Patent Jury Instructions at B.3.1c; *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256 at 15).

## XIV.    LIMITATIONS UNDER THE DOCTRINE OF EQUIVALENTS[26]

The prior art may preclude a finding of infringement under the doctrine of equivalents. I will explain what "prior art" is, but, generally speaking, "prior art" is things that were already known or done before the invention. In reaching your decisions in this case, you must use the definition of "prior art" that I provide to you.

To determine whether the prior art precludes a finding of infringement under the doctrine of equivalents for a particular feature that is accused of infringing a particular claim, you must determine what features are in the "prior art" as well as what features would have been obvious from the "prior art" to a person having an ordinary level of skill in the field of technology of the patent at the time of the invention.

However, if Defendants establish that a feature that (1) meets the same claim requirements as the feature that is accused of infringing and (2) has the same allegedly "equivalent" alternative feature(s) as the feature that is accused of infringing is in the prior art or would have been obvious from the prior art to a person having ordinary skill in the field of technology of the invention at the time of the invention, you must find that the claim has not been infringed.  Defendants have the burden of proving that this hypothetical, equivalent claim was within the prior art at the time of the alleged infringement, by a preponderance of the evidence.

---

[26] *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256 at 16-17); *see also* Fed. Cir. Bar Ass'n Model Patent Jury Instructions at B.3.1d (citing *Honeywell Int'l v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004); *Festo Corp. v.Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359 (Fed. Cir. 2003) (en banc); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999); *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 676, 684 (Fed. Cir. 1990)).

You may not find that a feature infringes a claim under the doctrine of equivalents if you find that: (1) the allegedly "equivalent" alternative feature(s) was/were described somewhere in the patent and (2) that feature  is not covered literally by any of the claims of the patent.

[Defendants propose: You may not find that a feature infringes a claim under the doctrine of equivalents if you find that, during the patent application process, the applicant for the patent distinguished an unmet requirement from the allegedly "equivalent" alternative aspect of that feature.

Defendants have argued that Droplets cannot assert infringement under the doctrine of equivalents due to statements Droplets made to the PTO in order to get the claim allowed in the first place. In order to find the accused features to be equivalent, you must also make certain findings regarding the statements Droplets made to the PTO in order to get the patents-in-suit. Specifically, in order to find equivalents, you must first also find one or more of the following: (1) the amendment that is asserted by Droplets to limit the scope of equivalents substituted a broader requirement for a narrower requirement or replaced a requirement of equal scope; (2) the reason for making this amendment was not related to patentability; (3) a person having ordinary skill in the field of technology of the patent at the time of the amendment would not have foreseen the potential substitution of the allegedly "equivalent" alternative for the unmet claim requirement; (4) the reason for the amendment is tangential or relates to some issue other than the assertion of equivalence at issue; or (5) some other reason, such as the shortcomings of language, prevented the applicant from using claim language that included the allegedly "equivalent" alternative. You may not find that this alternative of the accused feature is an equivalent to an unmet requirement of a claim if that requirement was added to the claim (or to any claim of the patents-in-suit) by amendment during the prosecution of the applications that

21

led to issuance of the patents-in-suit, unless you also find that at least one of these factors that I have identified to you.[27][28]

You may not determine that an alternative aspect of a feature is equivalent to an unmet requirement of a claim if a finding of infringement under the doctrine of equivalents would effectively eliminate that requirement. Specifically, the alleged equivalent cannot eliminate or ignore an element or requirement of the claim.

---

[27] Droplets objects as this language is not included in the instruction given in *SSL Services*, which the remainder of the instruction adheres to. *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256 at 16-17).

[28] This instruction, while omitted from the *DDR Holdings* instruction, is included in the Federal Circuit Bar Association Model Patent Jury Instructions at B.3.1d (from which this Court's instruction in *DDR Holdings* apparently came) in this precise location.  Defendants believe that this language is proper, necessary, and a correct statement of the law.  *See, e.g.*, *Festo Corp. v.Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359 (Fed. Cir. 2003) (en banc); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999).

## XV.      INDUCED INFRINGEMENT[29]

Droplets also alleges that Defendants are liable for infringement by actively inducing their customers to directly infringe the patents-in-suit literally or under the doctrine of equivalents. Droplets alleges induced infringement as to claim 1 of the '745 patent, claims 1 and 2 of the '838 patent, and claims 2, 24 and 25 of the '115 patent. As with direct infringement, you must determine whether there has been active inducement separately for each Defendant.

Defendants are liable for inducing infringement of a claim only if Droplets proves by a preponderance of the evidence:

(1) that the acts are actually carried out by Defendants' customers and directly infringe that claim;

(2) that Defendants took action during the time the patents-in-suit were in force intending to cause the infringing acts by their customers; and

(3) that Defendants were aware of the patents-in-suit and knew that the acts, if taken, would constitute infringement of the patents-in-suit or that Defendants believed there was a high probability that the acts by Defendants would infringe the patents-in-suit and Defendants took deliberate steps to avoid learning of that infringement.

[Defendants propose: You may only find infringement by inducement if a single customer of Defendants can be held responsible for the performance of all steps of the patent.[30]]

[31]

---

[29] Fed. Cir. Bar Ass'n Model Patent Jury Instructions at B.3.1d; *SSL Services, LLC v. Citrix Systems, Inc.,* Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256 at 17-18); *see also DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519 at 13-14).

In order to prove active inducement, Droplets must prove that each of the above requirements is met. Further, proof of each element must be established by a preponderance of the evidence, *i.e.*, that is it more likely than not that each of the above requirements has been met. In order to establish active inducement of infringement, it is not sufficient that Defendants' customers themselves directly infringe the claim. Nor is it sufficient that Defendants were aware of the act(s) by their customers that allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find that the inducer specifically intended to cause its customers to engage in infringing acts and knew that its actions would cause direct infringement or subjectively believed there was a high probability that the encouraged acts infringed claims of the patent and took deliberate actions to avoid learning that factIf you do not find that the accused infringer specifically meets these intent requirements, then you must find that it has not actively induced the alleged infringement.

---

[30] *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2119 (2014).

[31] Droplets objects to these instructions because they omit concepts of *respondeat superior. See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111 (2014) (criticizing *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329-20 (Fed. Cir. 2008)).

## XVI.     INVALIDITY—GENERALLY[32]

I will now instruct you on the rules you must follow in deciding whether or not Defendants have proven that the asserted claims of the '745, '838, and '115 patents are invalid. An issued patent is accorded a presumption of validity based on the presumption that the United States Patent Office acted correctly in issuing the patent. To prove that any claim of a patent is invalid, Defendants must persuade you by clear and convincing evidence that the claim is invalid.  Even if Defendants present items of prior art that may not have been before the Patent Office, the presumption of validity of the patent remains intact and the clear and convincing standard does not change. Patent invalidity is a defense to patent infringement. Even though the Patent Office examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.

You have heard evidence of prior art that the Patent Office may not have evaluated before granting the patents at issue.  You must consider whether that evidence is materially new, and if so, consider that fact when determining whether an invalidity defense has been proven by clear and convincing evidence.  Prior art differing from the prior art considered by the Patent Office may, but does not always, carry more weight than the prior art that was considered by the Patent Office.  Again, the ultimate responsibility for deciding whether the claims of the patent are valid is up to you, the members of the jury.

Invalidity is determined on a claim-by-claim basis.  If one claim of a patent is invalid, this does not mean any other claim is necessarily invalid.  Claims are construed the same way for determining infringement as for determining invalidity.

---

[32] Generally adapted from Court's Charge in *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519 at 16-17).

Defendants have challenged the validity of the asserted claims on a number of grounds.  I will now explain to you Defendants' grounds for asserting invalidity of the asserted claims.  In making your determination as to invalidity, you should consider each claim separately.

## XVII.      ENABLEMENT[33]

The patent law contains certain requirements for the part of the patent called the specification.   Defendants contend that the asserted claims of the patents-in-suit are invalid because the specification does not contain a sufficiently full and clear description of how to make and use the full scope of the claimed invention.   To succeed, Defendants must show by clear and convincing evidence that the patents-in-suit do not contain a sufficiently full and clear description of the claimed invention.   To be sufficiently full and clear, the description must contain enough information to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time the original patent application was filed.   This is known as the "enablement" requirement. If a patent claim is not enabled, it is invalid.

In order to be enabling, the patent must permit persons having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time of original filing without having to conduct undue experimentation.   However, some amount of experimentation to make and use the invention is allowable.   In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1) the time and cost of any necessary experimentation;

(2) how routine any necessary experimentation is in the field of computer science;

(3) whether the patent discloses specific working examples of the claimed invention;

(4) the amount of guidance presented in the patent;

(5) the nature and predictability of the field of computer science;

---

[33] Fed. Cir. Bar Ass'n Model Patent Jury Instructions at B.4.2b.

(6) the level of ordinary skill in the field of computer science; and

(7) the scope of the claimed invention.

No one or more of these factors is alone dispositive.  Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you.  You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the original application, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

## XVIII.    PRIOR ART[34]

Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.  To be prior art, the item or reference must have been made, known, used, published, or patented either before the invention was made or more than one year before the filing date of the patent application.  However, prior art does not include a publication that describes the inventor's own work and was published less than one year before the date of invention.

For the claim to be invalid because it is not new, Defendants must show by clear and convincing evidence that all of the requirements of that claim were present in a single previous device or method that was known of, used, or described in a single previous printed publication or patent.  We call these things "anticipating prior art."  To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either stated expressly or implied to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.

---

[34] Fed. Cir. Bar Ass'n Model Patent Jury Instructions at B.4.3a-1.

# XIX.      ANTICIPATION[35]

In order for someone to be entitled to a patent, the invention must actually be "new" and the inventor must not have lost her or his rights by delaying the filing of an application claiming the invention.  In general, inventions are new when the identical feature has not been made, used, or disclosed before.  Anticipation must be determined on a claim-by-claim basis.

Defendants contend that the asserted claims of the patents-in-suit are invalid because the claimed inventions are anticipated or because Droplets lost the right to obtain a patent. Defendants must convince you of this by clear and convincing evidence.

Here is a list of ways that Defendants can show that a patent claim was not new or that the patentee lost the right to patent the claims:

(1) An invention is not new if it was known to or used by others in the United States before the date of invention.   An invention is known when the information about it was reasonably accessible to the public on that date.

(2) An invention is not new if it was already patented or described in a printed publication, anywhere in the world before the date of invention.  A description is a "printed publication" only if it was publicly accessible.

(3) Droplets has lost its rights if the claimed invention was already patented or described in a printed publication, anywhere in the world by Droplets or anyone else, more than a year before September 14, 1999, which is the effective filing date of the application for the patents-in-suit.   An invention was patented by another if the other patent describes the same invention claimed by Droplets to a person having ordinary skill in the technology.

---

[35] Fed. Cir. Bar Ass'n Model Patent Jury Instructions at B.4.3b-1.

(4) Droplets has lost its rights if the claimed invention was publicly used, sold, or offered for sale in the United States more than one year before September 14, 1999, which is the effective filing date of the application for the patents-in-suit.  An invention was publicly used when it was either accessible to the public or commercially exploited.  An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, *i.e.*, a description to one having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice.

Defendants may not establish anticipation by arguing that the accused product practices the prior art, or by comparing the accused products to a prior art reference.  Instead, anticipation can be established only by clear and convincing evidence that each element of the asserted claim, properly construed, is found in a single prior art reference.

## XXI. OBVIOUSNESS[36]

Even though an invention may not have been identically disclosed or described in a single prior art reference before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field of the invention at the time the patent application was filed.

The Defendants may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention, as a whole, would have been obvious to persons having ordinary skill in the art at the time the invention was made.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of technology of the patent, that someone would have had, at the time the claimed invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on the building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of technology of the patent to combine the known elements in a way the claimed invention does, taking into account such factors as:

---

[36] But for party names, verbatim from *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519 at 20-22).

(1) Whether the claimed invention was merely the predictable result of using prior art elements according to their known functions;

(2) Whether the claimed invention provides an obvious solution to a known problem in the relevant field;

(3) Whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

(4) Whether the prior art teaches away from combining elements in the claimed invention;

(5) Whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and

(6) Whether the change resulted more from design incentives or other market forces.

To find that prior art rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success.

In determining whether the claimed invention was obvious, do not use hindsight.  In other words, you should not consider what a person of ordinary skill in the art would know now or what has been learned from the teaching of the patents-in-suit.

The ultimate conclusion of whether a claim is obvious should be based on your determination of several factual issues:

1.   You must decide the level of ordinary skill in the field of the invention that someone would have had at the time the claimed invention was made.

2.   You must decide the scope and content of the prior art.  In determining the scope and content of the prior art, you must decide whether a reference is pertinent, or analogous, to the claimed invention.  Pertinent, or analogous, prior art includes prior art in the same field of endeavor as the claimed invention, regardless of the problems addressed by the reference, and prior art from different fields reasonably pertinent to the particular problem with which the claimed invention is concerned.  Remember that prior art is not limited to

patents and published materials, but includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

3. You must decide what difference, if any, existed between the claimed invention and the prior art.

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention that may shed light on the obviousness or not of the claimed invention, such as:

> (1) Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);
> (2) Whether the invention satisfied a long-felt need;
> (3) Whether others had tried and failed to make the invention;
> (4) Whether others invented the invention at roughly the same time;
> (5) Whether others copied the invention;
> (6) Whether there were changes or related technologies or market needs contemporaneous with the invention;
> (7) Whether the invention achieved unexpected results;
> (8) Whether others in the field praised the invention;
> (9) Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;
> (10) Whether others sought or obtained rights to the patent from the patent holder; and
> (11) Whether the inventor proceeded contrary to accepted wisdom in the field.

Corroboration is required of any witness whose testimony is asserted to prove prior invention or invalidate a patent, regardless of his or her level of interest.

## XXII. SCOPE AND CONTENT OF THE PRIOR ART[37]

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art.

The scope and content of prior art for deciding whether the invention was obvious includes prior art in the same field as the claimed invention, regardless of the problem addressed by the item or reference, and prior art from different fields that a person of ordinary skill in the art using common sense might combine if familiar so as to solve the problem, like fitting together the pieces of a puzzle. When a party attacking the validity of a patent relies on prior art which was specifically considered by the Examiner during the prosecution of the application leading to the issuance of the patent, that party bears the burden of overcoming the deference due a qualified government agency official presumed to have performed his or her job.

---

[37] Fed. Cir. Bar Ass'n Model Patent Jury Instructions at B.4.3c(ii).

## XXIII. DATE OF INVENTION[38]

Since the date of invention is in dispute in this case, you must determine a date of conception and reduction to practice for the claimed inventions in the '745, '838, and '115 patents in the United States and whether the named inventors were reasonably diligent in reducing the invention to practice.[39] Conception is the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention, as it is to be applied in practice.

Reduction to practice occurs either as of the filing of the patent application or when the invention was actually made and shown to work for its intended purpose. Reasonable diligence means that the inventor worked continuously on reducing the invention to practice. Interruptions necessitated by the everyday problems and obligations of the inventor or others working with him or her do not prevent a finding of reasonable diligence.

In order to prove prior invention in this case, a party is required to present additional evidence beyond the testimony of the prior inventors. However, you must evaluate all pertinent

---

[38] Defendants object to any instruction to the jury on the date of invention. In its "Disclosure of Asserted Claims and Infringement Contents," Droplets disclosed a priority date of September 14, 1999, upon which its asserted claims allegedly are entitled, pursuant to P.R. 3-1(e). Droplets incorrectly assumes that the priority date it disclosed pursuant to P.R. 3-1(e) does not limit the date of invention. Any evidence or arguments of prior conception offered to establish an earlier priority date than that provided in Droplets' P.R. 3-1(e) Disclosure must be excluded as untimely. *See Softvault Sys., Inc. v. Microsoft Corp.*, No. 2:06-CV-16, 2007 WL 1342554, at *1–2 (E.D. Tex. May 4, 2007). Accordingly, Defendants object to Droplets post-discovery attempts to move the date of invention to sometime earlier than its disclosed priority date. If the Court sustains Defendants' objection, it should also modify the above instructions on invalidity defenses to reference September 14, 1999 as "the date of invention."

[39] *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519 at 19).

evidence, including that testimony, and make a sound determination that the evidence credibly establishes prior invention.[40]

---

[40] *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519 at 19).

## XX.        LEVEL OF ORDINARY SKILL[41]

Several times in my instructions I have referred to a person of ordinary skill in the field

of the invention.[42]  In deciding what the level of ordinary skill in the field is, you should consider

all the evidence introduced at trial, including but not limited to: (1) the levels of education and

experience of the inventors and other persons actively working in the field; (2) the types of

problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with

which innovations are made; and (5) the sophistication of the technology.

The parties are in dispute regarding the appropriate level of ordinary skill in the field in

this case.  Droplets asserts that a person of ordinary skill in the art in the 1998-1999 timeframe is

a person with a Bachelor of Science degree, or its equivalent experience, in computer science.

Defendants assert that a person of ordinary skill in the art in the 1998-1999 timeframe is a person

with an electrical engineering, computer engineering, or a computer science degree or the

equivalent knowledge gained through experience; and at least one year of computer

programming experience in the design and implementation of client-server class computing

systems.

---

[41] *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256 at 24).

[42] *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519 at 24).

## XXI.   EXPRESS LICENSE[43] [44] [45]

Aside from asserting that they do not infringe, either directly or indirectly, Defendants contend that all of their accused features are covered by a License Agreement with Adobe.

Droplets and Adobe entered into a Settlement and License Agreement.   To prove the accused features are licensed, Defendants must prove by a preponderance of the evidence that their accused features are within the scope of the claims or disclosure of the Adobe License.

[Droplets proposes: Particularly, Defendant must also prove for each accused features that the accused feature is within the scope of "Licensed Product" as defined in the agreement. The Agreement defines "Licensed Product" as:

"(i) any and all past, present and future Adobe products, processes, components, software, hardware, technology, data, methods, services, or activities or instructions of any kind singly or in combination with any other products, processes, components, software, hardware, technology, data, methods, services, or activities or instructions (collectively, 'Adobe Products') and (ii) any and all past, present and future third party software or applications either (a) that are developed or written using any Adobe Products or (b) not in limitation of the foregoing, to the extent such software or applications use any Adobe Product to practice any invention claimed in the Licensed Patent(s)."

---

[43] *Omega Patents, LLC v. Fortin Auto Radio, Inc.*, No. 6:05-cv-1113-Orl-22DAB, Jury Charge at A-15, P-16, C-17 (M.D. Fla. 2007)

[44] Droplets does not object to the jury deciding the issue of express license. However, Droplets believes that the current language proposed by Defendants is imprecise and lacks requisite detail.

[45] Defendants object to Droplets' additional instruction, presented for the first time to Defendants at 10:40am on January 11, 2015.  Defendants may be able to agree to a revised and more detailed license instruction, however Defendants have not had adequate time to review.  Defendants reserve the right to supplement this proposed instruction at a later time.

Defendants must prove that they are "Adobe Customers/Users" as defined in the Agreement. The Agreement defines "Adobe Customers/Users" as: "any licensed customer, licensed user, developer, distributor, reseller, original equipment manufacturer, or retailer of any Licensed Product."

Furthermore, Defendants must prove for each accused features that the accused feature is within the scope of the following sections of the Agreement:

(A) Subject to full payment as contemplated herein but effective as of the Effective Dave, Droplets and its officers, directors, and employees hereby voluntarily, fully and forever, irrevocably and unconditionally, release, acquit, and discharge: (a) all Claims brought or that could have been brought in the Lawsuit against the (i) Adobe Customers/Users with respect to any and all Licensed Products and (ii) Adobe Parties, and (b) all other past, present or future Claims arising in whole or in part as of or prior to the Effective Date against the (i) Adobe Customers/Users with respect to any and all Licensed Products and (ii) Adobe parties, including Claims relating to the Licensed Patent(s), other intellectual property, trade secrets or breach of contract. No Claim of direct or indirect infringement or misappropriation of any patent or other intellectual property right may be based in whole or in part on any evidence of the existence, operation, or effect of a Licensed Product.  The covenants and license in Section 3 shall fully exhaust all Claims of the Licensed Patent(s) as to each Licensed Product, regardless of whether it has any reasonable or intended use other than the practice of the Licensed Patent(s) or embodiment of essential features.

(B) Subject to full payment as contemplated herein but effective as of the Effective Dave, Droplets hereby voluntarily, fully and forever, and unconditionally, grants to Adobe an irrevocable, unrestricted, fully paid-up, perpetual covenant not to sue (i) Adobe

Customers/Users with respect to any and all Licensed Products and (ii) Adobe with respect to any and all Claims against Adobe, including Claims relating to the Licensed Products or based on the Licensed Patent(s) and any other intellectual property of Droplets, breach of contract claims, tort claims and trade secret misappropriation claims.

(C) Subject to full payment as contemplated herein but effective as of the Effective Dave, Droplets hereby voluntarily, fully and forever, and unconditionally, grants to Adobe a worldwide, irrevocable, unrestricted, nonexclusive, fully paid-up, royalty-free, perpetual license under the Licensed Patent(s) to make, have made, use, sell, offer for sale, import or otherwise exploit the Licensed Products.  Droplets hereby grants to Adobe Customers a worldwide, irrevocable, fully paid-up, royalty-free, perpetual, limited to the Licensed Products, nonexclusive, nontransferable license under the Licensed Patents to make, have made, use, sell[,] offer for sale, import or otherwise exploit the Licensed Products.  No claim of direct or indirect infringement may be based in whole or in part on any evidence of the existence, operation, or effect of a Licensed Product.]

# XXII.    DAMAGES[46] [47]

If you find that Defendants infringed any valid claim of Droplets' '745, '838, and '115 patents, you must then consider what amount of damages to award to Droplets, if any.  [Droplets proposes: You must make this determination separately for the accused website of each Defendant.][48] [49] [Defendants propose: You must make this determination separately for each accused feature.[50]][51]  I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

The damages you award, if any, must be adequate to compensate Droplets for the infringement you find. Damages are not meant to punish an infringer. Your damages award, if you reach this issue, should put Droplets in approximately the same financial position that it would have been in had the infringement not occurred.

---

[46] *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

[47] Defendants object to this instruction because the evidence does not support a jury question on damages.  Accordingly, this instruction has no basis in fact.

[48] *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519 at 24).

[49] Defendants object to Droplets' proposed instruction as an inaccurate statement of the law in light of the facts of this case and also likely to confuse the jury, particularly because these jury instructions consistently refer to Defendants' "features" as infringing.

[50] *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519 at 24).  Defendants propose this instruction because it more clearly reflects the authority cited *as it relates to the facts in this case*.  The accused "products" in this case are website features, not entire websites—as were the accused products in *DDR Holdings, LLC v. Digital River, Inc.*  Accordingly, instructing the jury to determine damages according to each Defendant's website is an inaccurate statement of the law.  The instruction proposed by Defendants is less likely to confuse the jury.

[51] Droplets objects as this instruction does not accurately reflect the authority cited.

Droplets has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Droplets establishes that it more likely suffered than not.  Damages, if any, should be given to Droplets only for features that infringe the patents-in-suit, and not for non-infringing features.[52]  That is, if Droplets proves by a preponderance of the evidence that one of Defendants' website features infringes one of the patents-in-suit, you should award damages to Droplets for that patent for the time period of infringement.  However, if one of Defendants' website features does not infringe any of the patents-in-suit, no damages should be given to Droplets for infringement by those non-infringing website features. While the patent owner is not required to prove damages with mathematical precision, it must prove them with reasonable certainty.  Droplets is not, however, entitled to damages that are remote or speculative.[53]

In this case, Droplets seeks what is called a "reasonable royalty."

---

[52] *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519 at 24).

[53] *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519 at 25).

# XXIII.        REASONABLE ROYALTY[54]

A "reasonable royalty" is defined as the monetary amount Droplets and Defendants would have agreed upon as a fee for use of Droplets' invention at the time prior to when infringement began.

The determination of a damage award is not an exact science, and the amount need not be proven with unerring precision. You may approximate, if necessary, the amount to which the patent owner is entitled.  In such case, while the damages may not be determined by mere speculation or guess, it is proper to award a damages amount if the evidence shows the extent of the damages as a matter of just and reasonable inference.

I will give more detailed instructions regarding damages shortly.  Note, however, that under the patent laws, Droplets is entitled to recover no less than a reasonable royalty for each infringing sale or use of its inventions.

In general, a royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place between them at a time prior to when the infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty

---

[54] Adapted from *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex. Oct. 12, 2012) (Dkt. No. 519 at 25); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

that would have resulted from this hypothetical negotiation, and not simply a royalty either party would have preferred.  Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.  Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

In this case, you should consider only those damages that Droplets may have incurred after the date Droplets filed this lawsuit—September 11, 2011.  Do not consider any damages for any time before that date.

## XXIV.   FACTORS TO CONSIDER FOR REASONABLE ROYALTY CALCULATION[55]

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1)    The royalties received by the patentee for the licensing of the patents-in-suit, proving or tending to prove an established royalty;

(2)    The rates paid by the licensee for the use of other patents comparable to the patents-in-suit;

(3)    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold;

(4)    The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;

(5)    The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter;

(6)    The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales;

(7)    The duration of the patent and the term of the license;

(8)    The established profitability of the product made under the patents, its commercial success, and its current popularity;

(9)    The utility and advantages of the patented product over the old modes or devices, if any, that had been used for working out similar results;

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

_____

[55] *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex. Oct. 12, 2012) (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions;

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

(14)    The opinion and testimony of qualified experts; and

(15)    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee-who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention-would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty Defendants would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

Damages should be apportioned to the value contributed by the invention; that is, Droplets must apportion the damages between the portion of the accused features that is the patented component and the unpatented components of the accused features.  Therefore, expect as specifically provided in this instruction, in applying the fifteen factors I've just read to you, you should only consider as the royalty base the portion of the value of the entire feature that is

associated with the patented components, as compared to the portion of the value associated with other components, such as unpatented elements, or components or improvements developed by the accused infringer, if any.  You may not consider the entire value of a feature containing non-patented elements unless you find (1) that the patented component is functionally integrated with the non-patented components, and (2) that the patented component is the basis for customer demand for the entire website feature.

# XXV.    DELIBERATION INSTRUCTIONS[56]

I would now like to provide you with a few final instructions before you begin your deliberations.  You must perform your duties as jurors without bias or prejudice as to any party.

The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict, regardless of the consequences.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true in patent cases between corporations, partnerships, or individuals. A patent owner is entitled to protect its patent rights under the United States Constitution. This includes bringing suit in a United States District Court for money damages for infringement. The law recognizes no distinction among types of parties. All corporations, partnerships and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you will each have a copy of this charge to take with you.  If you desire to review any of the exhibits which the Court has admitted into evidence, you should advise me by a written note delivered to the Court Security Office, and I will send that exhibit or exhibits to you.  Once you retire, you should select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of

---

[56] *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex. Oct. 12, 2012) (Dkt. No. 519 at 29-31); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256 at 29-31).

the instructions that the Court has given you about your conduct during the trial.  After you have reached your verdict, your Foreperson is to fill in on the verdict form your unanimous answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me.  I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict and I have discharged you, you are not required to talk with anyone about the case unless the Court orders otherwise.

You may now retire to the jury room to deliberate.

## APPENDIX A – CLAIM TERMS

| Term | Independent Claims | Court's Construction |
|---|---|---|
| *operating environment information*<br><br>*information relating to operating environment*<br><br>*operating environment* | '745: 1<br>'838: 1, 15, 29 | *information about a client computer's operating system, user interface, or hardware capabilities* |
| *client device information* | '115: all | *information about a client computer's operating system, user interface, or hardware capabilities* |
| *real-time pull of update information* | 745: 33 | *an information update upon request by the client* |
| *presentation client program code*<br><br>*presentation client* | '745: 26<br>'838: 29 | *platform independent software, running on a client, that can present remotely stored applications and that can transmit user input to remotely stored applications* |
| *Application* | '745: all<br>'838: all | *a software program that executes specific tasks for an end user* |
| *presenting . . . the application*<br><br>*presenting an application*<br><br>*display the application, presenting said invoked application*<br><br>*presenting . . . applications* | '745: all<br>'838: all | *displaying a remotely executing application and enabling the user to interact with that application according to the user interface requirements* |
| *computer program code*<br><br>*program code* | '745: all<br>'838: 1, 15 | plain meaning |

| *link*<br><br>*interactive link* | '745: all<br>'838: 2, 16 | *computer code that: (1) retrieves and presents applications and/or information stored at remote locations across the network when selected by an end user; and (2) includes facilities for restoring previous operating states of the application as the application is re-presented at a user's computer*<br><br>An interactive link cannot be a bookmark, shortcut, hyperlink, or Internet address (URL) |
|---|---|---|
| *storing, on the client computer, [a/an] [interactive] link* | '745: 1<br>'838: 2, 16 | plain meaning |
| *event message* | '115: all | plain meaning |
| *update message* | '115: all | plain meaning |
| *re-establishing the [second] communication connection* | '745: 1<br>'838: 2, 16 | plain meaning |
| *remotely stored application* | '115: all | plain meaning |
| *user interface information* | '115: all | plain meaning |
| *application logic* | '115: all | plain meaning |
| *hardware, software, and/or user interface capabilities* | '115: 9 | *hardware, software, or user interface capabilities, or any combination thereof* |