1

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF TEXAS
2               MARSHALL DIVISION

3
   DROPLETS, INC.          |  DOCKET NO. 2:11CV401
4                          |
                           |  JANUARY 8, 2015
5   VS.                    |
                           |  1:06 P.M.
6                          |
   EBAY, INC., ET AL       |  MARSHALL, TEXAS
7
   ------------------------------------------------------
8
           VOLUME 1 OF 1, PAGES 1 THROUGH 55
9
      REPORTER'S TRANSCRIPT OF FINAL PRETRIAL CONFERENCE
10
            BEFORE THE HONORABLE ROY S. PAYNE
11          UNITED STATES MAGISTRATE JUDGE

12  ------------------------------------------------------

13
   APPEARANCES:
14
   FOR THE PLAINTIFF:     JOSHUA WRIGHT BUDWIN
15                        JAMES E. QUIGLEY
                          JENNA ALBERT
16                        MCKOOL SMITH
                          300 WEST 6TH STREET
17                        SUITE 1700
                          AUSTIN, TEXAS 78701
18
19  FOR THE DEFENDANTS:    MELISSA SMITH
                          GILLAM & SMITH
20                        303 SOUTH WASHINGTON AVENUE
                          MARSHALL, TEXAS 75670
21
                          JOHN BARR
22                        CHRISTOPHER SHIELD
                          BRACEWELL & GUILIANI
23                        711 LOUISIANA STREET
                          SUITE 2300
24                        HOUSTON, TEXAS 77002

25

```
 1   COURT REPORTER:          TONYA B. JACKSON, RPR-CRR
                              FEDERAL OFFICIAL REPORTER
 2                            300 WILLOW, SUITE 239
                              BEAUMONT, TEXAS  77701
 3

 4

 5      PROCEEDINGS REPORTED USING COMPUTERIZED STENOTYPE;
       TRANSCRIPT PRODUCED VIA COMPUTER-AIDED TRANSCRIPTION.
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Final Pretrial Conference 1-8-2015

3

1           (OPEN COURT, ALL PARTIES PRESENT.)

2           THE COURT:  For the record, we're here to

3   complete the Final Pretrial Conference in *Droplets versus*

4   *Overstock.com and Sears*, which is Case 2:11-401 on our

01:06PM   5   docket.

6           Would counsel state their appearances for the

7   record.

8           MR. BUDWIN:  Your Honor, Josh Budwin with

9   McKool Smith on behalf of plaintiffs.  With me is James

01:06PM  10   Quigley and Jenna Albert.

11           THE COURT:  All right.  Thank you, Mr. Budwin.

12           MS. SMITH:  Good afternoon, your Honor.

13   Melissa Smith on behalf of defendants.  I'm joined by our

14   lead counsel Mr. John Barr and his partner Mr. Chris

01:07PM  15   Shield.  And I believe we are ready to proceed, your

16   Honor.

17           THE COURT:  All right.  Thank you, Ms. Smith.

18           MS. SMITH:  Thank you.

19           THE COURT:  Let me see.  I just want to --

01:07PM  20   before we get onto the primary agenda, which is the

21   deposition designation objections, I want to make sure

22   that we don't have any issues regarding the exhibit

23   lists.

24           MR. BUDWIN:  Thank you, your Honor.  My

01:07PM  25   understanding is we're squared away on the exhibit lists.

Final Pretrial Conference 1-8-2015

4

1  I'm not aware of any outstanding issues from either side.

2          THE COURT:  All right.  So, you have -- I've

3  got a copy of Plaintiff's Ninth Amended Trial Exhibit

4  List.  And defendants agree that that's an accurate

01:07PM  5  recitation of the status of those exhibits?

6          MR. SHIELD:  Yes, your Honor.

7          THE COURT:  And, Mr. Budwin, you have seen the

8  defendants' most recent amended trial exhibit list?

9          MR. BUDWIN:  Yes, your Honor.  I believe it

01:07PM  10  was filed or was going to be filed soon.  I think we saw

11  it and we approved it, but maybe it hasn't been filed

12  yet.

13          THE COURT:  All right.  As long as you are in

14  agreement with its contents, then we're good on that.

01:08PM  15          I noticed there are a few items that were

16  carried last time, and those -- we'll get a written

17  ruling out on those promptly.

18          So, is there anything else besides the

19  deposition designations that the plaintiff thinks we need

01:08PM  20  to take up today?

21          MR. BUDWIN:  That's all I'm aware of, your

22  Honor.

23          THE COURT:  Mr. Shield, on your side?  Or

24  Mr. Barr?

01:08PM  25          MR. BARR:  Sorry, your Honor.  There was just

one issue, and I don't think it's really an issue.  I was

wondering if the parties play video depositions at trial,

is it okay to have the transcript show up at the bottom

of the video?

01:08PM        THE COURT:  You know, that -- I find that

that's helpful to the jury.  The only real question would

be is whether there's some issue about whether it's an

accurate depiction of what's in the transcript.  And

if -- but unless there's an issue about the accuracy of

01:09PM  it, I think that the court would appreciate that.

        MR. BARR:  All right.  At least one of our

witnesses has an accent, and it would be easier for

everyone probably for it being read while spoken.

        THE COURT:  And I'm assuming that what would

01:09PM  play up there is out of the certified deposition

transcript.

        MR. BARR:  Yes, sir.

        THE COURT:  So, in that case, there should be

no issues.

01:09PM        MR. BUDWIN:  We agree, your Honor.  There's no

issues with that.

        THE COURT:  All right.  Good.  Thank you.

        All right.  Then, Mr. Budwin, if you want to

address your objections to their deposition designations;

01:09PM  and then I'll give them a chance to take the lead with

1    respect to their objections.

2            MR. BUDWIN:  Thank you, your Honor.

3            One point of clarification briefly is, you

4    know, there have been several back-and-forths between the

01:09PM    5    parties on designations and meet and confers and further

6    narrowing.  We received the most recent narrowing from

7    the defendants from what was a substantial volume of

8    testimony and is still a relatively large volume of

9    testimony late last night, and our team was busy working

01:10PM    10   with that -- there was a joke about Mr. Quigley sending

11   e-mails at 5:00 o'clock this morning to Mr. Barr related

12   to it -- right up to the time of the hearing.  Our

13   paralegals are actually still printing the transcripts,

14   and we hope to have some of them brought over.  It's been

01:10PM    15   a lot of work dealing with the cut-downs that were made

16   to the deposition objections and designations.  And what

17   I would ask and see if we can have agreement on is that

18   the testimony that's designated after today and has been

19   ruled upon is the testimony that will be played.  Because

01:10PM    20   what we had before was defendants had designated a large

21   number -- let's say a couple of pages in a row and then

22   they cut their designations so it was only a portion of

23   that.  We had to go back this morning and

24   counter-designate some of that because we thought it was

01:10PM    25   needed for completeness or whatever.  And if there's

1   further cut-downs, we're concerned that we're going to

2   have this substantial time crunch again dealing with

3   responding to those cut-downs.

4          So, what I would propose is it's either you're

01:11PM   5   going to play everything that's deemed designated and

6   accepted at this point unless the parties agree to

7   further cut-downs; but if there's no agreement to the

8   further cut-down, then each party should have to play the

9   sum total of what's designated after the hearing today.

01:11PM   10         MR. BARR:  Your Honor, if I could address

11   that.  First of all, I think I'll say that I think it's

12   fair that both sides worked very hard on this and there

13   was substantial back and forth and reductions on both

14   sides and both sides worked late into the night, which is

01:11PM   15   how I knew that Mr. Quigley was sending e-mails early

16   this morning.

17         THE COURT:  I assume that that's correct.

18         MR. BARR:  But secondly, your Honor, we don't

19   agree with this proposal because obviously I think the

01:11PM   20   plaintiffs should have to designate whatever testimony

21   they want to play now and that would include things that

22   would be respondent to things that we would play if we're

23   going to play that testimony that needs to be optionally

24   complete or responded to.  Obviously as this case

01:12PM   25   proceeds, especially since we're the defendants and we go

01:12PM

second, we may have to cut people's time based on how much time we have left, based on how much time the live witnesses take, and I don't think that the plaintiffs should be able to say that the witnesses of the defendants that we -- as of right now we have to make our decision as to who we're going to put on and how much time they're going to spend.  We should be able to manage our case as we need to as it goes along.  If they want to play something in their case, they can play whatever they want in their case.

THE COURT:  Well, I will agree with you with two footnotes.  One, if there is an indication that either side is overdesignating by any considerable amount in order to sort of hide the ball, then that's an issue that we can address but -- I'm not hearing that at this point but if you -- if either side thinks they can show that, then that's something for which the court might have a remedy.

And the other thing would be I think we need to build in a time schedule with respect to the designations so that if either party decides to significantly alter what they had previously designated, that the other side will have a chance to look at it and decide whether or not they think that under the rule of completeness they need some part of that in.  Maybe we've

Final Pretrial Conference 1-8-2015

9

1   already got that established.

2          MR. BARR:  I think we do, your Honor, have

3   that.  And frankly -- and somebody correct me if I'm

4   wrong; but at least the depo excerpts I've seen, I don't

01:13PM  5   think any of them are longer than 15 or 20 minutes for

6   any particular witness.  So, I don't think this is an

7   issue where we're going to have -- I mean, some of these

8   are like 8 minutes long.  So, I don't think we're going

9   to have an issue of an hour's testimony has been

01:13PM 10   designated and now it's cut down to 5 minutes.  I don't

11   think that's what we're talking about here.

12          THE COURT:  Well, and that's fine.

13          If -- so, Mr. Budwin, tell me why -- why do

14   you feel that the schedule that's in place now in terms

01:14PM 15   of notice of the -- what's going to be offered to the

16   jury won't accommodate what you need?

17          MR. BUDWIN:  Thank you, your Honor.  We talked

18   about this at the first pretrial.  And the schedule

19   that's presently outlined, which we objected to initially

01:14PM 20   but our objection was overruled, is that the

21   designations -- the final designations to be played will

22   be exchanged at 1:00 p.m. the day before they're going to

23   be played and objections by 6:00.  The problem with that

24   is our trial team, including our lead paralegal and our

01:14PM 25   associates, are going to be in court during that time.

10

1 It's going to make it very difficult for us to respond to

2 substantial changes that are being made to those

3 designations, which is why we had originally proposed

4 building in more time, that designations would be

01:14PM 5 exchanged, you know, maybe by 5:00 p.m. the night before

6 they're going to be used with objections by 10:00 o'clock

7 that night, as opposed to the 1:00 p.m./6:00 p.m. during

8 court the day before.

9          THE COURT:  Well, the -- so, you're talking

01:15PM 10 about 5:00 p.m. two days before.

11          MR. BUDWIN:  Yes.  So, right now it's

12 1:00 p.m. the day before.  5:00 p.m. two days before

13 would give us that night while we're not in court to deal

14 with any further changes and amendments.  I mean, just

01:15PM 15 between what we got from the defendants last night until

16 now, it was, you know, five, six, seven hours of work for

17 the three attorneys sitting here and plus our staff; and

18 we're not going to be able to turn that around while

19 we're in trial, which is what we'd have to do under the

01:15PM 20 current schedule.

21          MR. BARR:  Your Honor, this was an issue we

22 discussed at the first pretrial when they asked for, I

23 think, 48 hours before; and the problem is that we'd have

24 to designate before we even start -- long before we start

01:15PM 25 our case.  This is only nine hours per side.

11

1    THE COURT:  And I'm not inclined to make it --

2  your designations be due two days before, but one

3  possibility would be to give the receiving party a little

4  more time past 6:00 to note their objections.

01:16PM  5    MR. BARR:  And that would be fine, your Honor.

6  I'm happy with -- how much time do you -- 10:00 o'clock?

7    MR. BUDWIN:  If we could have until

8  10:00 o'clock -- we'll try to get them out earlier if we

9  can -- that would be better.

01:16PM  10    THE COURT:  And if you can live with that,

11  then we'll just adjust it in that fashion.

12    MR. BARR:  I'm getting some daggers from my

13  table over here.

14    How about 8:30?  Would that be okay?

01:16PM  15    THE COURT:  I mean, I do think that

16  10:00 o'clock is a little on the late side to be getting

17  the objections.

18    MR. BUDWIN:  We agree to 8:30.

19    THE COURT:  All right.  Then we'll just adjust

01:16PM  20  the schedule to show that the time will be moved from

21  6:00 p.m. back to 8:30 p.m. for the party receiving the

22  designations to note any objections.  And I assume that

23  would include any requests that additional matter be

24  included back in for completeness.

01:16PM  25    MR. BUDWIN:  Thank you, your Honor.  How would

1  the court like to handle that scenario?  Which is some of

2  what we're going to have to deal with today but we'd have

3  to deal with down the line.  I mean, for example, if

4  defendants currently have material designated that they

01:17PM  5  de-designate between now and when they're going to play

6  it and then we want to get some of it added, there's

7  probably going to be a dispute over whether it's a

8  completeness objection and it counts toward their time or

9  whether it's a counter and it counts toward our time and

01:17PM  10  that's, I think, a lot of what we're faced with here

11  today and frankly I don't want to be bothering the court

12  with that, you know, the morning of.

13          THE COURT:  You know, other than the bothering

14  the court with it, I don't know what -- what would you

01:17PM  15  propose?  I can say you'll flip a coin and...

16          MR. BUDWIN:  I mean, my proposal would be

17  something like if it's designated now and a party

18  de-designates it and the other party wants to have that

19  material designated, that it should be presumptive as a

01:17PM  20  106, with the ability of the other party to rebut that if

21  they don't think it's actually a 106 completeness.

22          THE COURT:  You know, obviously if -- you

23  know, that just changes which side will be playing games

24  with the time.  I think that the best we can do is say

01:18PM  25  that you need to try and work it out; and if you can't

1  work it out, you can explain to Judge Gilstrap the

2  morning of the trial why you couldn't work it out.

3           MR. BUDWIN:  Thank you, your Honor.

4           THE COURT:  Okay.

01:18PM   5           MR. BUDWIN:  So, I think with respect to our

6  objections -- or the defendants' objections to our

7  counters, Mr. Quigley is going to address those for our

8  side.

9           THE COURT:  All right.  This is -- we're going

01:18PM  10  to start off with your objections to the defendants'

11  designations.

12           MR. BUDWIN:  If you want to start with our

13  objections to the defendants, that would be Ms. Albert --

14  no, sorry.  Mr. Quigley.  I got it right the first time.

01:18PM  15  I said it backwards.

16           THE COURT:  All right.  And, Mr. Quigley, just

17  to make sure we're all on the same page, I'm starting

18  with Document 343-2 which is entitled "Defendants'

19  Supplemental Deposition Designations"?

01:19PM  20           MR. QUIGLEY:  I believe that's right.  And

21  then the first witness within there is Matthew Baskin?

22           THE COURT:  Yes.

23           MR. QUIGLEY:  Yes, your Honor.  I believe our

24  first two objections are completeness objections.

01:19PM  25           Sorry.  Just to introduce Mr. Baskin, your

Final Pretrial Conference 1-8-2015

14

1    Honor, he is one of the inventors of the patents.

2             And the first objection, Mr. Diaz, if we can

3    have page 14, lines 2 through 11 on the screen.  And if

4    you can blow up 2 through 11, help me see it.

01:20PM  5             So, defendants have now designated this

6    testimony, handing Mr. Baskin the patent.  They

7    previously had designated lines 12 through 17 which we're

8    asking be included under the rule of completeness where

9    Mr. Baskin simply explains -- I'm sorry -- his role in

01:20PM 10   drafting the patents.  Has he seen the patent, what was

11   your role in drafting the patent is 12 through 17, which

12   is what we ask be designated under the rule of

13   completeness.

14             THE COURT:  All right.  Just so I can

01:20PM 15   understand the dynamics here, you're not objecting to

16   anything.  You're just asking that the jury be shown

17   certain additional lines.  And the reason you're framing

18   it as a 106 instead of as a counter-designation is

19   because you want the time to be counted against the

01:21PM 20   defendant?

21             MR. QUIGLEY:  I think the -- we do want the

22   time to be counted against the defendants but the reason

23   is -- and I think we'll see this later with other

24   objections that we have with Mr. Baskin and the other

01:21PM 25   inventors -- is that a number of defendants' questions go

01:21PM

towards the inventor's understanding of the patent
claims.  And I think that when he's being handed the
patent and he's being asked what role he had in drafting
the patent, those questions are fairly considered
together.

THE COURT:  Well, I can tell you my
inclination on these is to broadly allow you to have the
additional testimony played to the jury but to say that
I'm going to treat it timewise as a counter-designation

01:22PM
such that, you know, it would count on your time.  If you
think it's important that the jury see it and they don't,
then I -- I think that that should be something that we
simply allow but count towards your time.

MR. QUIGLEY:  Thank you, your Honor.  With

01:22PM
that understanding, we'll actually drop, then, I believe
in our objections all of our 106 objections.

THE COURT:  Which means that you don't believe
that --

MR. QUIGLEY:  We think that our other 106

01:22PM
objections are similar to this 106 objection.

THE COURT:  And, so, rather than
counter-designate it, you'll simply drop it?

MR. QUIGLEY:  We're going to counter-designate
without the 106.

01:22PM
THE COURT:  Okay.  So, you -- all right.  If

1   I'm understanding right, then, all of your 106 objections

2   would just be counter-designations.

3           MR. QUIGLEY:  Correct, your Honor.

4           THE COURT:  Okay.  Mr. Shield and Mr. Barr, do

01:23PM  5   you -- with the understanding that they're going to be

6   part of the plaintiff's case timewise, do you have any

7   objection to that?

8           MR. SHIELD:  No, your Honor.

9           THE COURT:  Okay.  What's next, Mr. Quigley?

01:23PM  10          MR. QUIGLEY:  In Mr. Baskin's transcript, if

11  we could go to page 173, line 7.  We're objecting to the

12  testimony beginning here, your Honor, and running through

13  line 21 of page 174, with some spaces in between on

14  there, of defendants' designation list.  We believe that

01:23PM  15  these questions go towards claim construction.  We

16  believe that the court construes the claims, not the

17  inventors, and the court here has construed the claims

18  and to the extent that defendants wanted additional claim

19  terms construed, they could have asked the court to do

01:24PM  20  so.

21          So, we can see here "What does it mean that

22  the presentation information is based on second

23  information," lines 7 through 9.  That language is right

24  from the '745 patent, claim 1.

01:24PM  25          THE COURT:  Let me hear from the defendant

1 their response on the relevancy and 403 objection.

2           MR. SHIELD:  First, your Honor, it's the

3 inventors; and all the inventors testified that they had

4 only seen the '745 patent.  They hadn't reviewed the

01:24PM 5 others; they didn't know about it.  So, these claims are

6 the only ones we can ask about to understand what their

7 invention is.  The inventors were asked what their

8 invention is so that we can understand what the scope is

9 supposed to be properly and the invention can be

01:25PM 10 explained to the jury.

11           The problem is -- and it really goes to an

12 enablement issue -- the inventors didn't understand their

13 claims; and they talk about, "Well, in my computer" --

14 we'll have probably several of these today.  "As a

01:25PM 15 computer programmer, I've never seen these terms.

16 They're not used regularly."  And those all go to

17 enablement issues that are, you know, at issue with

18 invalidity.

19           THE COURT:  Why does it matter whether the

01:25PM 20 inventors understand all the language in the claims?

21           MR. SHIELD:  Well, the inventors are supposed

22 to sign an oath saying that they understand what their

23 invention is when it's filed with the patent office and

24 that they possess their invention.

01:25PM 25           THE COURT:  Well, but the inventors aren't on

1    trial here.

2              MR. SHIELD:  Right, but the inventors who were

3    involved with filing the application -- if it was -- they

4    didn't possess it at the time they filed it, that's an

01:25PM   5    enablement issue.

6              THE COURT:  Isn't enablement whether or not it

7    is set forth in the specification?

8              MR. SHIELD:  Correct, that the claims can be

9    understood by a person of skill in the art based on the

01:26PM  10    specification.  The inventors should know more about

11    their invention than anyone because they had the

12    knowledge that went into the specification and the

13    claims.  So, when the inventors have no understanding of

14    their claims or what's in their patent, it goes to

01:26PM  15    whether or not the patent adequately discloses to the

16    public what their invention is.

17              THE COURT:  And can you cite me any law that

18    says if an inventor doesn't understand the language of

19    the claims, that the invention is not enabled?

01:26PM  20              MR. SHIELD:  Well, it's actually relied upon

21    by our experts, your Honor, related to invalidity issues.

22    And part of what they're talking about is their skill in

23    the art and they're talking about the fact that the

24    inventors who also are skilled in the art, according to

01:27PM  25    the plaintiff's definition of a person of ordinary skill

19

1    in the art, whether or not they understood it.  So, it's

2    not our expert saying, "I don't understand what it is.

3    I'm skilled in the art."  It's actually looking at --

4    these are the inventors.  So, it's not just me, an

01:27PM  5    expert.  If the inventors didn't understand what it was,

6    it wasn't adequately disclosed to the public to show that

7    they possessed their invention.

8              THE COURT:  All right.  And do you have any

9    case law that you think is particularly pertinent to

01:27PM  10   testimony of an inventor with respect to the enablement

11   issue?

12             MR. SHIELD:  No, your Honor, we don't have it

13   with us.  I'm sorry.  We can brief that issue for you,

14   though.

01:28PM  15             THE COURT:  That's all right.  I just wondered

16   if you did.

17             Let me let Mr. Quigley respond.

18             MR. QUIGLEY:  I mean, as your Honor I think

19   caught on, the issue of enablement is reading the

01:28PM  20   specification, not an inventor who hasn't read the patent

21   or been involved with Droplets for 15 years and whether

22   they can look at the claim language in isolation and tell

23   the defendants' attorneys what that claim language means.

24   I mean, as many of these inventors testified and as that

01:28PM  25   quote from Mr. Baskin I showed earlier said, he didn't

have any involvement in the prosecution.  You know, just
as in claim construction, inventor testimony is extrinsic
evidence.  Here, you know, that evidence that they're
trying to present is going to be misleading; and the jury
01:28PM   isn't going to understand that those inventors aren't
required to know what every term in the patent means 15
years after the patent was filed.

THE COURT:  Mr. Shield.

MR. SHIELD:  There's another issue with a
01:28PM   couple of the inventors, your Honor.  Mr. Baskin is a
stock owner in Droplets and he stands to gain money if
Droplets is successful and there is deposition testimony
related to that fact.  So, they're an admission against
interest, also.

01:29PM   THE COURT:  That certainly addresses a hearsay
objection, but it doesn't address relevance.  I don't see
a hearsay objection; so, I don't think we need to go to
whether or not it's an admission.

I do not see any relevance of this testimony
01:30PM   to an enablement defense.  So, I'm going to sustain the
plaintiff's objection.

MR. QUIGLEY:  Your Honor, in order to
short-circuit a number of our objections, we think
that -- there's a bucket here with these types of
01:31PM   questions and answers regarding claim terms.  We would

Final Pretrial Conference 1-8-2015

21

1    suggest that the Baskin testimony -- if you'd like for me

2    to list it, I can list it and defendants can tell me if

3    they disagree with my bucket.

4         THE COURT:  Well, let's go on to the next one

01:31PM  5    at least so we can make sure.

6         MR. QUIGLEY:  Sure.  So, if we can just

7    continue, Mr. Diaz, down 173-07.  There's more in that

8    passage, through 174-21.

9         You can see line 21, page 173, "Do you know

01:31PM  10   how the presentation information is based on an operating

11   environment?"  Again this is claim language they're

12   asking the inventor about.

13        And here, "If you look to the next limitation

14   in claim 1, it discusses presenting the fourth

01:32PM  15   information.  Do you see that?"

16        MR. BARR:  Your Honor, we agree that this

17   particular one is similar to your last ruling.  So, this

18   one is -- we don't agree that there's a bucket that

19   applies to all of these, but this particular one is

01:32PM  20   similar to the last one.  So, I think the ruling would be

21   the same on this particular one.  But we would like to

22   take each one of them up because we think there is a

23   difference between the questions where we asked the

24   inventor to describe what his invention is without

01:32PM  25   relation to claim terms and the questions where we talk

1    about claim terms specifically.

2              THE COURT:  All right.  So, tell me:  Of your

3    designations that are objected to within the range of

4    page 173 to 181, which ones do you want to separately

01:32PM  5    address?

6              MR. SHIELD:  180-10 to 181 -- or actually

7    181-10 to 181-21.

8              MR. QUIGLEY:  I think you're right, 181-10

9    through 181-21.

01:33PM  10             THE COURT:  All right.

11             MR. QUIGLEY:  If you could blow this up,

12   Mr. Diaz.

13             You can see here line 10, "Would you agree

14   that both JavaScript and VBScript are not what is claimed

01:33PM  15   by your invention?"  Again they're asking the inventor

16   questions about what is in the claims.  The claims have

17   been construed, your Honor.  We have experts that are

18   going to be at trial talking about it.  We don't think

19   that it's appropriate to have an inventor that hasn't

01:33PM  20   read these claims in more than a decade and that didn't

21   draft the patent application testifying about what the

22   claim means and what it covers.

23             MR. BARR:  These specific questions have

24   nothing to do with the claim terms.  The words

01:33PM  25   "JavaScript" and "VBScript" are not in the claims.  This

goes to the heart of what he understood his invention

was.  And the problem we have in this case is that we

believe that Droplets is arguing that this invention is

something that it's not.  And, so, the evidence from the

01:34PM  inventors, especially an inventor who is an interested

party, as to what is and is not what he thought his

invention was, we do believe is relevant and is going to

be relevant to whether or not there's infringement in

this case.  So, this particular question and these others

01:34PM  I believe that we've just cited are not questions asking

about claim terms like the prior set that the court

looked at.  These deal with a broader question of whether

you understand what your invention encompassed.

MR. QUIGLEY:  I'd just point out that I

01:34PM  disagree.  It mentions what is claimed, not just what is

your invention.  We have no problem and we didn't object

to a number of questions about what is your invention, is

your invention JavaScript, but not is what is claimed

JavaScript.

01:34PM  MR. BARR:  Well, obviously what is claimed is

what the invention is.  So -- and I think you can easily

and everyone can easily tell what is a word that appears

in the claims and what is not.  And the words

"JavaScript" and "VBScript" do not appear in the claims

01:35PM  and we don't believe that they are part of the invention

1  and that's what the inventors agreed as well.  But that's

2  not what's being argued in this case.

3          So, we could have -- I guess the word

4  "claimed" by your invention, but that's the same as

01:35PM  5  saying that is what your invention is.  The claims define

6  the invention.  But that doesn't mean that because

7  something is the invention that it is a question about a

8  claim term, because these are not claim terms.

9          THE COURT:  All right.  Mr. Quigley, tell me:

01:35PM 10  Do you intend to represent to the jury that JavaScript

11  and VBScript are covered by your claims?

12          MR. QUIGLEY:  I don't think we intend that --

13  you know, that Droplets invented JavaScript.  There may

14  be implementations of JavaScript web applications that

01:35PM 15  are accused in this case, but that's a different issue.

16          THE COURT:  Well, and, so, why does this

17  matter, is I guess what I'm trying to figure out.

18          MR. QUIGLEY:  Referring to the claim language

19  again and what the claim language covers.  The claim

01:36PM 20  language already says what it covers.

21          THE COURT:  Well, if this -- instead of saying

22  "is not what is claimed," if it said "is not what you

23  invented"?

24          MR. QUIGLEY:  I'm confident they did ask that

01:36PM 25  question and we did not object to that.  In the depo

1  designations they asked the inventors "Did you invent

2  JavaScript," "Did you invent HTML," "Did you invent web

3  browsers?"  All of those questions are littered

4  throughout these depo designations, and those aren't

01:36PM  5  objected to.

6         THE COURT:  And I don't think that whether the

7  word "claimed" is in there or not matters, and I'm not

8  going to sustain the objection on that one.

9         What's next?

01:36PM  10         MR. QUIGLEY:  Line 15, asking (reading) is it

11  correct that the presentation client is not HTML.  It's

12  on this slide right here.  "Presentation client" is a

13  claim term.

14         MR. BARR:  That one, your Honor, is a claim

01:37PM  15  term; and we will agree that's covered by your prior

16  ruling.

17         THE COURT:  All right.

18         MR. QUIGLEY:  So, 181-10 to 14 would come in

19  but not 181-15 to 21.

01:37PM  20         MR. BARR:  Through 19.

21         MR. QUIGLEY:  19?

22         MR. BARR:  19.  The next one is the next

23  question.

24         THE COURT:  So, 181-15 through 18 is out.

01:37PM  25         MR. QUIGLEY:  19, your Honor, I believe.

26

1          MR. SHIELD:  It's 19.

2          THE COURT:  Oh, yes, 19.  I'm sorry.

3          I don't know why, but the -- in the chart of

4     343-2 there, the line numbers are off a little bit from

01:37PM  5     what the transcript appears to be.

6          MR. BARR:  We'll double-check that, your

7     Honor.  I don't know which draft is used.  We'll make

8     sure it's fixed by the time these things get played.

9          THE COURT:  Just so the record is clear, what

01:38PM 10     we're talking about eliminating is the question that

11     starts at 181-15 through the answer on 19.

12          MR. QUIGLEY:  Yes, your Honor.

13          THE COURT:  Okay.

14          MR. QUIGLEY:  That's all we have for

01:38PM 15     Mr. Baskin.

16          There are no objections to Mr. Berberian, the

17     next witness designated.

18          And then with respect to Mr. Blonder, the

19     first testimony that we have an objection to begins on

01:38PM 20     page 130, line 7; and it goes through 131, line 21.  And

21     basically this testimony here, he's being handed an

22     e-mail that's the e-mail that defendants I think either

23     withdrew or they had said on Tuesday would be used only

24     for equitable issues, previously DTX-24.

01:39PM 25          MR. SHIELD:  This is an equitable issue.

1          MR. QUIGLEY:  So, we can agree to withdraw

2     130, line 7, through 131, line 21?

3          MR. SHIELD:  It will be only an equitable

4     issue.  It will be withdrawn from the jury.

01:39PM  5          MR. BARR:  We need to be able to offer it when

6     we make our equitable case.

7          THE COURT:  That's fine.  But it just won't be

8     played for the jury.

9          MR. BARR:  Yes, your Honor.

01:39PM  10         THE COURT:  All right.

11         MR. QUIGLEY:  Just to make it clear, page 130,

12    line 7, of Dr. Blonder's testimony through line 21 at

13    page 131 won't be played in front of the jury.

14         MR. SHIELD:  That's correct.

01:39PM  15         MR. QUIGLEY:  And the next objection to

16    Mr. Blonder is line 8 of page 148, begins there; and this

17    testimony goes through page 152 -- sorry -- 153, line 7.

18    It's kind of long, but it's all related.  This is about

19    what was previously DTX-28 which defendants withdrew, I

01:40PM  20    believe; and this is an article by Mr. Blonder, saying

21    not-so-nice things about the patent office.

22         MR. SHIELD:  We'll drop those.

23         MR. BARR:  By the way, I don't agree with that

24    characterization of the article but we have pulled that

01:40PM  25    exhibit and, so, we don't need that testimony.

1          THE COURT:  So, that would be the designations

2     that ran in page 148 through page 153?

3          MR. QUIGLEY:  Yes, your Honor.

4          THE COURT:  Okay.  Those will be withdrawn.

01:40PM   5          MR. QUIGLEY:  I believe that's it for

6     Dr. Blonder.

7               There are no objections to Mr. Brittan.

8               Mr. Bulkin is the next witness.  And if we

9     could have page 79 of Mr. Bulkin's testimony, line 22.

01:41PM   10              So, here they're setting up that Mr. Bulkin

11    has been a web developer or software developer for 20

12    years.

13              And, Mr. Diaz, if we can go to the next page.

14         MR. BARR:  Your Honor, I think part of these

01:41PM   15    questions do go under the court's prior ruling about

16    claim terms.  So, I think part of it -- and Mr. Shield

17    will tell you what part -- we're willing to withdraw

18    pursuant to your prior ruling.

19         THE COURT:  Well, if -- would it be helpful if

01:41PM   20    we give you a chance to -- if there are others here, I

21    can give you a few minutes to see if you can agree on how

22    that will play out; and we'll just come back and take up

23    the ones that you disagree with about.

24         MR. BARR:  That's a great idea, your Honor.

01:42PM   25         THE COURT:  All right.  Then we will check on

29

1    you in a few minutes.  Thank you.

2                    (Recess, 1:42 p.m. to 2:09 p.m.)

3                    THE COURT:  Mr. Quigley.

4                    MR. QUIGLEY:  We were successful in resolving

02:09PM   5    all but two or three of objections to defendants'

6    designations.

7                    Just for the record, defendants are dropping

8    for Mr. Bulkin -- sorry.  I'll go earlier in time.

9    Droplets is dropping its objections to page 79, line 22.

02:09PM  10                    THE COURT:  Is this about Mr. Bulkin?

11                    MR. QUIGLEY:  Mr. Bulkin.

12                    THE COURT:  Okay.

13                    MR. QUIGLEY:  So, page 79, line 22, to

14    page 80, line 8 -- we got to cut that in half kind of.

02:09PM  15    We're going to drop our objection to page 79, line 22,

16    through page 80, line 4; and defendants have agreed to

17    drop their designation for page 80, line 5 through

18    line 8.

19                    THE COURT:  Okay.

02:10PM  20                    MR. QUIGLEY:  Plaintiff is dropping its

21    objection to page 85, line 23, through page 87, line 4.

22                    THE COURT:  All right.

23                    MR. QUIGLEY:  Defendants are dropping their

24    designation for page 101, line 19, through 102, line 12.

02:10PM  25                    THE COURT:  All right.

30

1          MR. QUIGLEY:  I believe defendants are

2   dropping their designations for page 125, lines 6 through

3   11, and page 131, lines 14 through 16.

4          THE COURT:  All right.

02:10PM  5          MR. QUIGLEY:  And then it's going to get kind

6   of interesting here.  Defendants are going to drop their

7   designations beginning on page 160, line 22, through

8   167-16.  And now there is still going to be a dispute as

9   to line -- sorry -- page 167, line -- I have 16 through

02:11PM 10   23, but that must not be it.

11          MR. SHIELD:  No, that's it.

12          MR. QUIGLEY:  16 through 23 is where there's a

13   dispute.

14          And then page 169-7 to 12 there's also a

02:11PM 15   dispute.

16          If we could have, Mr. Diaz, from the Bulkin

17   deposition, page 167, lines 16 to 23.

18          So, here Mr. Bulkin is being asked if just

19   looking at the claims he could build the invention.  We

02:12PM 20   just don't think that's a proper question if trying to

21   ask the enablement or trying to ask indefiniteness -- or

22   make an indefiniteness argument, asking the inventor if

23   looking at the claims in the abstract whether they can

24   build the invention.  The question is if you can look at

02:12PM 25   the spec, everything a person of ordinary skill in the

1  art knew at the time, and looking at the claims would

2  have enabled the invention.  We just don't think that's

3  the question being asked here.

4           MR. SHIELD:  This is an interesting one, your

02:12PM  5  Honor, because we've talked about removing all of this

6  discussion about the claims and what he understood about

7  his claims because they're claim terms, and this is

8  actually kind of a cumulation.  So, they kind of wanted

9  to keep out any discussion of them actually talking about

02:13PM  10  the claims but he's specifically being asked here as an

11  inventor, having looked at his claims, could he build his

12  invention.  It's not asking what a claim means.  It's

13  just asking could he as an inventor reading his claims

14  understand his invention.

02:13PM  15           THE COURT:  All right.  And is "he" someone

16  who is being offered as an expert in this field?

17           MR. SHIELD:  He's not an expert.  He's an

18  inventor.  And an inventor presumptively has the

19  knowledge of how to practice their patent.

02:13PM  20           MR. BARR:  And, your Honor, as I understand

21  it -- and I'm sure one of these technical guys will

22  correct me if I'm wrong -- but it's the person with

23  ordinary skill in the art that's supposed to be able to

24  build the invention and I believe that certainly this

02:13PM  25  inventor meets the definition of a person with ordinary

1    skill in the art.  We can go back and look at his

2    qualifications and education, but I believe here that

3    it's a fairly low bar that the plaintiffs have set as a

4    person of ordinary skill.  And I don't believe that's

02:14PM    5    their objection to this designation.

6                 THE COURT:  It relates to the relevance in

7    that whether or not this individual thinks that this

8    particular claim defines a system that he could build.

9    Has a lot to do with why should the jury care.

02:14PM    10                MR. QUIGLEY:  If, your Honor, I could point

11    out that the inventor is sitting here being asked the

12    question with the claims in isolation and the relevant

13    question is when considering the specification as a

14    whole, not when just looking at a claim from a patent

02:14PM    15    whether you can build it.

16                THE COURT:  Well, there's nothing in the

17    question that limits him to consideration of the claim.

18                MR. SHIELD:  And, your Honor, we could

19    actually go through the testimony.  We went through and

02:15PM    20    walked through the specification where he, you know, read

21    it; and I asked him, "Did that portion of the

22    specification help you understand it any better?"  So, it

23    wasn't in pure isolation.

24                MR. BARR:  I think the reason -- to answer

02:15PM    25    your question, your Honor, why does the jury care, I

think it matters because the plaintiff's expert

Dr. Martin opines that anyone with a bachelor's degree in

computer science is a person with ordinary skill in the

art and would know how to build these features if they

02:15PM  looked at the patent; and here we have someone who meets

that definition who said -- and is in fact one of the

inventors who says that he could not do so.  So, we

believe that that rebuts that testimony; and that's why

we think that it's relevant.

02:16PM          THE COURT:  My concern with it, Mr. Shield and

Mr. Barr, is that I think inventor testimony is subject

to considerable abuse.  It carries the risk of unfair

weight in front of the jury, and it -- I understand you

are offering this as relevant to an enablement defense?

02:17PM          MR. BARR:  It's relevant to an enablement

defense.  It's also relevant to whether or not these

patents, you know, that they're -- the plaintiffs have

asserted that these patents -- their expert is going to

say that anyone with a bachelor's degree in computer

02:17PM  science looking at these patents can build the accused

systems; and the reason they have to say that is because

the specifics of building the accused feature such as

search suggest everyone admits are not in the patent.

So, there's a lot of things that are not in these patents

02:17PM  that they need in order to build these systems.  So,

1    that's his testimony that anyone with a bachelor's degree

2    in computer science knows everything they need to know to

3    build it if they see these patents.  So, that's that

4    issue.

02:17PM  5          As to the inventor testimony, of course I

6    agree with the court there's case law talking about

7    inventor testimony.  However, I think this generally

8    applies when it's being used by the patentee to try to

9    use it offensively against the defendant.  Here we're

02:18PM 10    using the inventor testimony against the patentee; and I

11    believe that's a different analysis because, you know,

12    they're not using their own person to abuse the system.

13    We're using it against them.

14          MR. SHIELD:  To clarify, your Honor,

02:18PM 15    Mr. Barr's point, usually what happens with inventors is

16    they say they invented more than what's described in the

17    patent.

18          THE COURT:  I understand that there are

19    differences in the direction in which it's being used,

02:18PM 20    but the concerns are similar.

21          MR. QUIGLEY:  At least with respect to claim

22    construction, inventor testimony, whether it favors the

23    patentee or disfavors the patentee, is still considered

24    extrinsic and is still considered less than helpful.

02:18PM 25          THE COURT:  And this is not really a claim

construction issue *per se* but, rather, one of enablement.

As I understand the test for enablement, it involves the

specification and whether or not it provides sufficient

description that one of ordinary skill in the art could

02:19PM  5  take and build with an acceptable degree of

experimentation; and this question is much more confined

than that.

8           MR. BARR:  And, your Honor, that's again I

think the second -- well, one of the arguments is

02:19PM 10  enablement.  The other relates to the infringement

argument that they have made and that is that just the

knowledge of a person with a bachelor's degree in

computer science supplies the other pieces that are

needed to build the accused features with the patents.

02:20PM 15  So, that's what -- this also has value to us for that

purpose.

17           THE COURT:  How does that relate to

infringement?

19           MR. BARR:  Because we have argued that the

02:20PM 20  patents do not teach -- we don't infringe for a number of

reasons, one being that these patents don't cover the

features, they don't teach you how to build these

features and whether the plaintiff is trying to fill that

void by saying through their expert that a person

02:20PM 25  graduating from college with a bachelor's degree in

36

1  computer science already has the missing pieces

2  necessarily to know how to build a search suggest

3  feature, an add to cart feature; so, therefore, if they

4  just look at the patent, they'll have everything they

02:20PM  5  need to know to build the system.  So, that's the other

6  piece in this, your Honor.

7          THE COURT:  I want to look at Mr. Bulkin's

8  testimony in more detail before ruling on this.  Do you

9  have a copy of the transcript that you can leave with me?

02:20PM  10          MR. BARR:  I'm sure we do.

11          MR. BUDWIN:  I have one, your Honor.  If I may

12  approach.

13          THE COURT:  Okay.  If you would hand that to

14  Ms. Andrews.

02:21PM  15          MR. QUIGLEY:  It does have some coloring party

16  designations in it but...

17          THE COURT:  That's fine.

18          All right.  We'll pass this one for now.

19          MR. SHIELD:  I believe our next dispute is

02:21PM  20  also on the same issue as that.  It's at lines -- 169-7

21  to roughly 169-12.

22          THE COURT:  All right.  I'll look at both of

23  the 167 and 169 offerings.

24          MR. QUIGLEY:  And I believe, your Honor -- let

02:21PM  25  me get my list back out.  Defendants are dropping their

1  designations for Mr. Bulkin beginning on page 70,

2  line 23, through page 172, line 2.

3         MR. SHIELD:  Actually line 15.

4         MR. QUIGLEY:  Oh, all the way through 15.

02:22PM  5  Okay.

6         MR. SHIELD:  I'm sorry.  You read it right.

7  I'm sorry.  I read it wrong.

8         MR. QUIGLEY:  They're dropping page 170,

9  line 23, through page 172, line 2.

02:22PM  10        THE COURT:  Okay.

11        MR. QUIGLEY:  The next witness, your Honor, is

12  Mr. Cunningham.  And defendants are dropping their

13  designation for Mr. Cunningham beginning on page 70,

14  line 7, through line 1 of page 74.

02:22PM  15        THE COURT:  All right.

16        MR. QUIGLEY:  And then defendants are dropping

17  their designated testimony from page 76, line 16, through

18  page 84, line 14.

19        And I just want to point out for the court

02:23PM  20  here that there is a mistake in the designation.  If you

21  look on page 16, I believe it is, it says page 83,

22  line 1, through page 86, line 16.  That should actually

23  be page 84, line 16.

24        THE COURT:  Okay.

02:23PM  25        MR. QUIGLEY:  So, they're dropping their

1    designation through page 84, line 14; but they're keeping

2    their designation from 84, line 15 through line 16, with

3    no objections.

4              THE COURT:  What about 18 through 24?

02:23PM  5        MR. QUIGLEY:  I don't believe there is an

6    objection to 18 through 24.

7              THE COURT:  Okay.

8              MR. QUIGLEY:  Sorry.  Mr. Shield has a

9    correction.

02:23PM  10        MR. SHIELD:  Actually 18 through 24 goes

11   actually to 85-2.  We looked at that to make sure the

12   answer was included.  So, 84-18 through 85-2.

13             THE COURT:  And 84-15 and 16 are also in?

14             MR. SHIELD:  Yes, sir.

02:24PM  15        THE COURT:  What about 17?

16             MR. SHIELD:  It's an objection.

17             THE COURT:  Okay.

18             MR. QUIGLEY:  And then beginning on page 93,

19   line 17, through page 94, line 16, defendants are

02:24PM  20   dropping those designations.

21             Defendants are also dropping page 108,

22   line 23, through page 109 -- sorry.

23             THE COURT:  Let me see.  What -- we left off

24   at 84.  I see objections at pages 93 and 94.  What's

02:24PM  25   happening with those?

1          MR. QUIGLEY:  93 and 94, those designations

2     are being dropped.

3          THE COURT:  Okay.

4          MR. QUIGLEY:  I'm sorry, your Honor.

02:24PM  5          THE COURT:  All right.  Go ahead.

6          MR. QUIGLEY:  So, from page 93, line 17,

7     through page 94, line 16, those are the designations that

8     are being dropped.

9          THE COURT:  Okay.

02:25PM  10         MR. QUIGLEY:  And then page 108, line 23,

11     through page 110, line 12 -- through 109-8.  I'm sorry.

12          MR. SHIELD:  It's 108-23 to 109-8.

13          MR. QUIGLEY:  Those are being -- the

14     designations are being dropped.

02:25PM  15         MR. SHIELD:  And then Droplets is dropping its

16     objection to 109-19.

17          And then defendants are dropping 110-13 to

18     110-22.

19          And just for the record, your Honor, all of

02:25PM  20     these are being dropped pursuant to your previous ruling.

21          THE COURT:  Okay.

22          MR. QUIGLEY:  So, that takes care of

23     Mr. Cunningham.

24          Mr. Franco is next, and he doesn't have any

02:26PM  25     non-106 objections which we've already discussed.

Final Pretrial Conference 1-8-2015

40

1          I believe there's no objection for Goyal,

2    for -- I can't say Veera's name.

3          MR. SHIELD:  That's Mr. Sekhar.

4          MR. QUIGLEY:  Mr. Sekhar.

02:26PM  5          Mr. Lifka, defendants have included a number

6    of designations.  As your Honor will remember, I think

7    Mr. Lifka has been excluded; so, plaintiffs just

8    generally object to any of Mr. Lifka's testimony being

9    designated and played for the jury.

02:26PM 10          MR. BARR:  And, your Honor, this was the issue

11   where the *in limine* -- the plaintiffs had requested some

12   additional documents to be produced and some additional

13   witnesses to talk about those documents, and we did that.

14   We produced the documents and the witnesses.  And then

02:26PM 15   *in limine* -- this is Ms. Nair and Mr. Lifka -- the

16   plaintiffs objected that the witnesses should not be able

17   to be used, even though they're going to use the

18   documents, because the witnesses were not listed in the

19   initial disclosures.

02:27PM 20          Of course we did list them in the -- they

21   weren't in the initial disclosures because we didn't

22   think about them until the plaintiffs said they wanted

23   them but -- at that hearing later and then of course we

24   did list them in our pretrial order and they were listed

02:27PM 25   long more than 30 days before trial as well as deposed.

Final Pretrial Conference 1-8-2015

41

1          The court excluded those and issued an order.

2     We did file objection to that order which -- on that

3     issue, the exclusion of those two witnesses; and that's

4     pending in front of Judge Gilstrap.  But we went ahead

02:27PM  5     and put -- these are the depos we would use if we get to

6     use the witnesses.

7          THE COURT:  All right.  Well, I -- then those

8     will be ruled on by Judge Gilstrap in connection with

9     your objection.

02:27PM 10          MR. QUIGLEY:  Nothing for Moore.

11          The same issue for Ms. Nair.

12          And I will note that I think it was actually

13     in the joint pretrial order that Droplets raised the

14     issue of Mr. Lifka and Ms. Nair, not in the motion

02:28PM 15     *in limine*; but your Honor still ruled.

16          Mr. Rose, there's no objections.

17          And the last substantive objection that we

18     have to deal with of Droplets is Dr. Theuerkauf's

19     deposition, page 81, line 23, through page 82, line 6.

02:28PM 20          So, this testimony here beginning on page 81,

21     line 23, is asking Mr. Theuerkauf whether he has ever

22     been to Marshall before; and I don't think Mr. Theuerkauf

23     has ever represented that he has been or that he has

24     significant ties to Marshall.

02:29PM 25          And, Mr. Diaz, if you can pull up the motion

1  *in limine* ruling, Plaintiff's No. 7.

2           Now, as your Honor stated here in the middle,

3  when Droplets requested that essentially defendants not

4  be allowed to ask about whether Droplets' witnesses had

02:29PM  5  been to Marshall, your Honor stated it was granted but

6  "Further, this *limine* shall not prevent defendants from

7  probing into a particular witness' connections to

8  Marshall, Texas, if the witness so represents such

9  connections."  And Dr. Theuerkauf hasn't represented such

02:29PM  10  connections; so, we don't believe designating testimony

11  simply asking him if he has ever been to Marshall is

12  appropriate.

13           MR. BARR:  And of course the court can read

14  the *limine*, and it was not that we can't inquire into

02:30PM  15  Marshall.  They requested that we not say that they filed

16  in Marshall for an improper or underhanded purpose, which

17  of course that's not what we're asking him.

18           THE COURT:  What's the relevance of the

19  question if not to indicate that he has no connection to

02:30PM  20  the place he's filed suit?

21           MR. BARR:  Sure.  Well, the relevance is that,

22  you know, of course my client Sears is from Chicago and

23  Overstock is from Salt Lake City and that's going to be

24  evident to the jury and, so, if -- Mr. Theuerkauf here is

02:30PM  25  going to be testifying, I assume by deposition since

1   we're talking about this, and we want to point out that

2   Droplets is not a local company and, so, they can't say

3   that "These guys are out of state, and we're local."

4           THE COURT:  Well, isn't there a question that

02:30PM  5   asks him where he lives or works or where he's from?

6           MR. BARR:  There is a question that asks him

7   that; but, of course, he's an employee of this company.

8   And I believe that there -- in fairness, there may be a

9   question asking where they're from, which I think is

02:31PM  10  Plano but...

11          THE COURT:  Yeah.  I believe that that

12  question is what this *in limine* was designed to avoid.

13  If they've opened the door by implying that he's from

14  Marshall, then I have no problem with your asking that

02:31PM  15  but I don't think that -- from what I'm hearing and from

16  what I'm not hearing from you, I don't think there's

17  anything in his testimony to imply that he has a

18  connection to Marshall, is there?

19          MR. BARR:  I don't believe so.  And I want to

02:31PM  20  make it clear I'm not implying that there's any problem

21  with filing in Marshall.  I'm from Tyler myself.  But I

22  just wanted to inquire as to everybody's connections with

23  the venue.

24          THE COURT:  Well, I think what this is

02:31PM  25  designed to allow is you to ask anybody where they're

02:32PM

1    from but not to imply that they have no connection to

2    Marshall and certainly this question which says "before

3    you filed suit in Marshall" which definitely draws a

4    relationship between the filing of the suit and his lack

5    of connection.  So, I'll sustain that objection.

6              MR. BARR:  Thank you, your Honor.

7              MR. QUIGLEY:  And that is the totality of

8    plaintiff's objections, your Honor.

9              THE COURT:  All right.

10             MR. SHIELD:  Let's take up the defendants'

11   objections to the plaintiff's designations.

12             Your Honor, we only have two objections to

13   plaintiff's designations.  The first one is -- they're

14   both for Mr. Goyal, an Overstock employee.  The first one

15   is at page 61, line 18, to 62-1.

16             The question from Ms. Albert to Mr. Goyal, an

17   employee of Overstock, is "Do you believe that holders of

18   valid infringed patents should be paid a reasonable

19   royalty?"  Mr. Goyal isn't being offered by Overstock for

20   an expert.  They haven't designated him as an expert.

21   They have not laid any foundation he has any special

22   training in what patents are, what reasonable royalties

23   are, et cetera, and this is highly prejudicial and

24   irrelevant and if it's played for the jury, it's going

25   to, you know, give a misleading impression regarding

 1  Overstock's position in this case.

 2          THE COURT:  Tell me about that.  What --

 3  what's the prejudicial nature of it?

 4          MR. SHIELD:  Well, they're asking about

02:34PM  5  patents and reasonable royalties to be paid.  He has no

 6  training in it.  They've not laid a foundation that he

 7  would even be able to answer the question.  So, they're

 8  offering it as an improper opinion.  It's legal

 9  conclusions, and it's going to --

02:34PM 10          Sorry, John.

11          MR. BARR:  I was just going to say, your

12  Honor, to answer your question, I don't think it's a

13  prejudice issue.  It's more that this is a technical

14  witness from Overstock, and they're asking him about his

02:35PM 15  personal opinion.  He was being a 30(b)(6) deposition, I

16  believe; and they're asking about his personal opinion

17  about holders of valid infringed patents.  It has no

18  relevance, what he thinks about that.

19          THE COURT:  Okay.  I don't see it as

02:35PM 20  prejudicial, but I do see it as somewhat argumentative to

21  be -- as to a 30(b)(6) witness.  I'll sustain that

22  objection.

23          MR. SHIELD:  And then the second one is on

24  page 69, line 22.  It ends on 71 where he says "No."

02:36PM 25          Mr. Goyal was asked if he is aware of any

non-infringing alternatives or substitutes for the

inventions of the claimed patents-in-suit.  The question

itself has several issues because they're asking someone

who testified during his deposition that he never read

02:36PM   the patents, he, you know, hadn't -- he's not ever filed

a patent.  And it's once again seeking an opinion from a

lay witness regarding non-infringing alternatives when he

does not understand what's even being asked of him.

THE COURT:  He's a corporate representative?

02:36PM   MR. BARR:  He is a corporate representative on

certain designated issues but he has never read these

patents and he's not a lawyer and he has not done any

study of the patents.  He's here to testify about how

Overstock's website works.

02:37PM   THE COURT:  Well, let me just find out if the

plaintiffs maintain that this question falls within one

of the designated topics for the 30(b)(6) deposition.

Ms. Albert.

MS. ALBERT:  Thank you, your Honor.

02:37PM   First I'd clarify that Mr. Goyal was -- one,

was, contrary to what was said earlier, designated as

both a 30(b)(6) and a 30(b)(1) deponent.  But more to the

point, Ms. Salters, defendants' damages expert, opines

that there are abundant non-infringing alternatives

02:37PM   available; and she cites Mr. Goyal's testimony as one of

1    the references that she considered.  The fact that there

2    is testimony from Overstock from a -- from the designer

3    of their entire website that --

4                MR. SHIELD:  Can you just show what you say

02:37PM    5    she cited?

6                MS. ALBERT:  Will you please pull up the

7    references cited, Mr. Diaz?

8                THE COURT:  Is there something on there that

9    refers to this?

02:38PM   10                MS. ALBERT:  Yes, your Honor.  Ms. Salters

11    relies on Mr. Goyal as one of the references she

12    considers for her expert report.  In that expert report

13    she puts forth testimony that is directly contrary to the

14    testimony here.

02:38PM   15                THE COURT:  Okay.  I'm -- I'm not sure why you

16    just put the last exhibit up.  I was not able to --

17                MS. ALBERT:  That wasn't the right page.  I'm

18    sorry, your Honor.

19                THE COURT:  All right.

02:38PM   20                MR. BARR:  Your Honor, it sounds like the

21    issue here is that Ms. Salters, as a damages expert, has

22    attached to her report, as required by the rules, all the

23    materials that she reviewed in connection with her work

24    on the case; and she reviewed, I think, all the

02:38PM   25    depositions.  There is not, that I'm aware of -- and I'm

48

1  sure counsel will correct me if I'm wrong -- anything in

2  Ms. Salters' report or anybody else's that relies on

3  Mr. Goyal's testimony related to non-infringing

4  alternatives.  Certainly she looked at Mr. Goyal's

02:39PM  5  testimony but --

6            THE COURT:  Well, let me ask -- back to the

7  question I posed originally, Ms. Albert, is there

8  anything in the 30(b)(6) topics that covers the subject

9  of that question?

02:39PM  10           MS. ALBERT:  No, your Honor.

11           THE COURT:  So, you're not relying upon his

12  being a 30(b)(6) representative.  You're saying that

13  you're relying upon his status as a responsible employee

14  of the defendant for that area?

02:39PM  15           MS. ALBERT:  Your Honor, he's a senior

16  director at Overstock; and he is responsible for the

17  design of the entire web page.  He was designated as to

18  the workings of the accused features; and given his

19  position in the industry, he's in a perfect position to

02:40PM  20  know whether or not acceptable, viable, non-infringing

21  alternatives exist.

22           MR. BARR:  Your Honor, Mr. Goyal testified,

23  first of all, that he had never read any of these

24  patents.  To determine if acceptable, non-infringing

02:40PM  25  alternatives exist, he would have to read the patents and

1   look and see if there's non-infringing alternatives.  He

2   said, "I've never seen the patents."

3           THE COURT:  And tell me -- that's been on my

4   mind.  Did Ms. Salters study the claims of the patents

02:40PM  5   before she testified about non-infringing alternatives?

6           MR. BARR:  No.  She relied on Mr. Gray, who is

7   one of the experts, who did do that and provided an

8   opinion about that, that she had talked to Mr. Gray.  So,

9   Ms. Salters relies on Mr. Gray for whether or not there's

02:40PM  10  non-infringing alternatives, in addition to Ms. Salters'

11  relied on Mr. Theuerkauf who testified that the Adobe

12  Flex system was a -- was an infringing thing that was

13  licensed.  But the issue here with Mr. Goyal is he's a

14  technical witness.  He is not being offered to provide a

02:41PM  15  legal opinion about non-infringing alternatives, which is

16  exactly what that is.

17           So, earlier when we were talking about we

18  couldn't ask the inventors about what the claim terms

19  mean, how can we now ask another lay witness about what

02:41PM  20  the claims mean who is a third party and has never seen

21  the patents?  It's certainly going to be confusing and

22  prejudicial to the jury, and they're asking for a

23  Rule 702 opinion from a lay witness as well.

24           THE COURT:  The reason I made the reference to

02:41PM  25  Ms. Salters is because I have been struggling with the --

her apparent reliance to some degree on the theory that
any competitor who hasn't been sued is thereby a
non-infringing alternative.

          MR. BARR:  I don't believe that that is her
opinion.  I believe that she talked to -- I don't have
her opinion in front of me.  But I believe that she
talked to Mr. Gray who is an expert who did look at
non-infringing alternatives.

          THE COURT:  Good, because that's the way it
should work.

          MR. BARR:  And, also, your Honor, I think it's
very important that she mentioned several times she also
relied on Mr. Theuerkauf who is one of the plaintiff's --
CFO of the plaintiff who talked about that; and in
addition, there's documents that were produced by the
plaintiffs that talk about their opinion about other
alternatives are out there.  I agree with the court, you
know, that certainly just -- just because someone hasn't
been sued doesn't necessarily mean that it's a
non-infringing alternative.  But of course if there's
someone that hadn't been sued and they've analyzed their
product, then that might be a little more to it and might
help there so...

          THE COURT:  Yes.

          MR. BARR:  But as to Mr. Goyal, no one has --

51

1 he has not opined nor has anyone relied on any opinion

2 from him related to non-infringing alternatives or these

3 patents at all.  He has only testified as to how

4 Overstock's website works.

02:43PM   5          MS. ALBERT:  Your Honor, that is not the case.

6          THE COURT:  Well, I think that -- given my

7 understanding of his role in the defendant, I think it's

8 a fair question.  I think you can explain through other

9 means that there are other people who do have that

02:43PM  10 knowledge; but I think the plaintiff should be allowed to

11 ask somebody within the defendant company whether or not

12 they're aware of non-infringing alternatives.  And if

13 you've got somebody else for the company who has spoken

14 to that, tell me about it.

02:43PM  15          MR. BARR:  No one from the company has spoken

16 about that because we had -- no one from the company has

17 analyzed these patents which they'd never heard of until

18 they were sued.  We have expert witnesses who are going

19 to talk about non-infringing alternatives.  In order to

02:43PM  20 determine if there's non-infringing alternatives, you've

21 got to determine if there's infringement.  No one from

22 the company has sat down -- and I'm not aware of any case

23 anywhere where it has said that a company is obligated to

24 do this -- is sit down and compare the claims to the

02:44PM  25 accused instrumentalities.  We have experts that are

Final Pretrial Conference 1-8-2015

52

1    going to testify on that issue.

2            And, similarly, no one from the plaintiff is

3    testifying that there's infringement.  They don't have

4    any of their witnesses -- their officers and executives,

02:44PM  5    none of them are testifying that we infringe.  They're

6    relying on their experts for that purpose.

7            So, I think to allow a lay witness who has

8    testified in his very deposition when they asked him "Did

9    you look at any of these patents," he said, "No, I

02:44PM  10   haven't" and then to say, "Are you aware of any

11   non-infringing alternatives," he said, "No, I'm not,"

12   well, of course he doesn't know.  If he doesn't know

13   what's infringing and he doesn't know what the patents

14   say, I don't see how he could have honestly said that

02:44PM  15   he's aware of a non-infringing alternative if he doesn't

16   know what an infringing issue is.

17            THE COURT:  Well, I'd --

18            MS. ALBERT:  Your Honor, let me -- excuse me.

19            THE COURT:  I'd certainly say that is very

02:44PM  20   valid, you know, redirect for the witness; but I would

21   think that if -- if he is the one who would make the

22   decisions about what technology the defendants use in

23   their websites, I don't see how it could be improper to

24   ask him that question.

02:45PM  25            MR. BARR:  Because he didn't make that

decision based on these patents.  The testimony from

everyone, including plaintiffs, has been that these

patents were never raised until the lawsuits were filed.

And we're not obligated to give a witness -- a fact

02:45PM  witness patents and make him do an expert opinion which

he would not be qualified to do.  He's not a lawyer.

THE COURT:  All of which is an answer that he

can give to that question.

MR. BARR:  I just think it's going to be

02:45PM  extremely confusing to the jury.  If the guy sits up

there and says, "I'm not aware of any non-infringing

alternatives," they're going to take that to mean that

there are none when in fact he hasn't looked for

non-infringing alternatives because that wasn't something

02:45PM  he was tasked with or obligated to do either.  So, that's

my point.

THE COURT:  And if anybody had asked him that,

I would say that's admissible, too.

MR. BARR:  I think it would be, but we -- but

02:45PM  he hasn't been asked to do that.  That would be not his

function or his qualification.  And it's implying that

there are none.  The question is unfair because it

implies that this is not -- it assumes that he had an

obligation to do that and didn't, which he didn't have

02:46PM  and hasn't.

54

             1          THE COURT:  Well, I -- I don't think all of

             2   that is built into the question.  But in any event, I'm

             3   going to overrule the objection to that testimony.

             4          MR. BARR:  Well, your Honor, in light of that

02:46PM      5   ruling, we'd ask to add in the -- to designate the

             6   testimony from this witness where he's asked if he has

             7   ever seen the patents and he responds that he has not and

             8   has not studied the patents, so that way the -- at least

             9   we could show that -- his basis for not knowing.

02:46PM     10          THE COURT:  I'll allow you to designate that.

            11          Does the plaintiff have anything else they

            12   want to designate that relates to his knowledge base?

            13          MR. BUDWIN:  Your Honor, it would be nice if

            14   we could see specifically what they're going to

02:47PM     15   designate.  If it's literally just that question and

            16   answer, I don't think there would be anything else.

            17          So, just has he read the patents-in-suit

            18   and...

            19          No, that's acceptable with no further

02:47PM     20   counters.

            21          THE COURT:  Okay.  So, what page and line are

            22   we adding in?

            23          MR. SHIELD:  Page 9 of Mr. Goyal, line 19 to

            24   line 22.

02:47PM     25          THE COURT:  Okay.  That's in.

55

1                 All right.  I carried the objections to

2    Mr. Bulkin on page 167 and 169.  I'll take the transcript

3    and review it and get you the result on that promptly.

4                 What else do we have?

02:47PM   5                 MS. ALBERT:  Nothing further from the

6    plaintiff, your Honor.

7                 THE COURT:  All right.

8                 MR. SHIELD:  Nothing further from the

9    defendants.

02:48PM  10                 THE COURT:  Very well.  I think that this

11   afternoon you should be able to receive the jury lists.

12   Has anybody tried to get those yet?

13                 MS. SMITH:  We received it, your Honor.

14                 THE COURT:  Okay.  Good.  Very good.

02:48PM  15                 All right.  Thank you, and we're adjourned.

16                 (Proceedings adjourned, 2:48 p.m.)

17

18   COURT REPORTER'S CERTIFICATION

19                 I HEREBY CERTIFY THAT ON THIS DATE, JANUARY 8,

20   2015, THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

21   RECORD OF PROCEEDINGS.

22

23

24                    /s/
                 TONYA JACKSON, RPR-CRR

25